Carter v. HealthPort Technologies, LLC

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2015

(Argued:  October 22, 2015                    Decided:  May 10, 2016)

Docket No. 15-1072

_____

MARISSA CARTER, EVELYN GRYS, BRUCE CURRIER, SHARON KONING, SUE BEEHLER, MARSHA MANCUSO, JACLYN CUTHBERTSON, as individuals and as representatives of the classes,

Plaintiffs-Appellants,

- v. -

HEALTHPORT TECHNOLOGIES, LLC, THE ROCHESTER GENERAL HOSPITAL, THE UNITY HOSPITAL OF ROCHESTER, F.F. THOMPSON HOSPITAL, INC.,

Defendants-Appellees.

_____

Before:  KEARSE, WALKER, and CABRANES, Circuit Judges.

Appeal from a judgment of the United States District Court for the Western District of New York, Frank P. Geraci, Jr., Chief Judge, dismissing plaintiffs' class action complaint, see 28 U.S.C. § 1332(d), which alleged that defendants charged excessive fees for providing copies of plaintiffs' medical records, in violation of N.Y. Pub. Health Law §§ 18(2)(d) and (e) (McKinney 2012) and N.Y. Gen. Bus. Law §§ 349(a) and (h) (McKinney 2004).  The district court granted defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that, because the complaint

stated that the charges for the requested records were paid by plaintiffs' attorneys, it failed to allege that the plaintiffs themselves suffered actual injury from the alleged overcharges and thus failed to show that plaintiffs had Article III standing to bring this action. See 2015 WL 1508851 (Mar. 31, 2015). We conclude that, because the complaint alleged that each named plaintiff "through [her or his] counsel" had "paid" the charges demanded for the records, and that the "ultimate expense" was borne by the plaintiffs, the complaint plausibly alleged that plaintiffs, as principals acting through their agents, had been injured by the alleged overcharges. The district court therefore erred in dismissing the complaint pursuant to Rule 12(b)(1) for lack of standing.

Vacated and remanded.

> STEPHEN G. SCHWARZ, Rochester, New York (Kathryn Lee Bruns, Faraci Lange, Rochester, New York; Kai H. Richter, Nichols Kaster, Minneapolis, Minnesota, on the brief), for Plaintiffs-Appellants.
>
> JODYANN GALVIN, Buffalo, New York (Hodgson Russ, Buffalo, New York, on the brief), for Defendants-Appellees HealthPort Technologies, LLC, The Rochester General Hospital, and The Unity Hospital of Rochester.
>
> ERIC J. WARD, Rochester, New York (Abigail L. Giarrusso, Ward Greenberg Heller & Reidy, Rochester, New York, on the brief), for Defendant-Appellee F.F. Thompson Hospital, Inc.

KEARSE, Circuit Judge:

Plaintiffs Marissa Carter et al., individually and as representatives of putative classes of persons alleging that they were overcharged for copies of their medical records by defendants Rochester General Hospital ("RGH"), Unity Hospital of Rochester ("Unity"), F.F. Thompson

2

Hospital, Inc. ("Thompson"), and HealthPort Technologies, LLC ("HealthPort"), appeal from a judgment of the United States District Court for the Western District of New York, Frank P. Geraci, Jr., Chief Judge, dismissing their complaint ("Complaint") for lack of subject matter jurisdiction. The Complaint alleged principally that RGH, Unity, and Thompson (collectively the "Hospitals"), through their agent HealthPort, charged plaintiffs more than the statutory maximum fees allowed by N.Y. Pub. Health Law §§ 18(2)(d) and (e) (McKinney 2012) for providing copies of plaintiffs' medical records. The district court granted defendants' motions to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that the Complaint alleged that the requested records had been paid for by plaintiffs' attorneys, ruling that the Complaint therefore did not plead injury-in-fact to the plaintiffs themselves and that plaintiffs lacked standing under Article III of the Constitution to bring this action. Plaintiffs challenge that ruling. For the reasons that follow, we conclude that, in light of ordinary principles of agency, the Complaint's allegations that each named plaintiff "through [her or his] counsel" "paid" the charges demanded by defendants for providing the records and that "Plaintiffs" bore "the ultimate expense" for those records, plausibly alleged that plaintiffs themselves were injured by the claimed violations of New York law. Accordingly, we conclude that the district court erred in dismissing the action pursuant to Rule 12(b)(1) for lack of standing.

I. BACKGROUND

The Complaint alleged that §§ 18(2)(d) and (e) of the New York Public Health Law forbid hospitals to profit from the process of providing a patient with copies of his or her medical records. The Complaint cited § 18(2)(d) as "requir[ing] that, upon written request by a patient or

3

other qualified person for that patient's medical records, a health care provider must furnish a copy of the patient information requested" (Complaint ¶ 20), and alleged that a "'[q]ualified person' is defined broadly" in §§ 18(1)(g)-(h) of that law "to include, among other[s] . . . , any subject of the medical information or attorney representing a qualified person" (Complaint ¶ 21). It alleged that § 18(2)(e)

> places two caps on the amount of money that a provider (or a person or entity acting on behalf of a provider) may charge for these records. First, a charge must "not exceed[] the costs incurred by such provider. . . ." Second, "the reasonable charge for paper copies shall not exceed seventy-five cents per page."

(Complaint ¶ 22 (quoting N.Y. Pub. Health Law § 18(2)(e) (emphases ours)).)

A. The Complaint's Factual Allegations

The Complaint--whose factual assertions are taken as true, given the district court's dismissal on the basis of the Complaint--alleged the following as facts. Plaintiffs are seven individuals, each of whom had been a patient of one of the Hospitals. (See Complaint ¶¶ 33, 40, 47, 54, 70, 77, 84.) HealthPort was "a for-profit limited liability company" (id. ¶ 14) that "ha[d] contracts with the [Hospitals] and other New York health care providers to (a) respond to requests for medical records, and (b) produce such records to patients and other qualified persons" (id. ¶ 24).

Between October 2012 and April 2014, each plaintiff, "through [her or his] counsel," "requested medical records from" the treating hospital. (Complaint ¶¶ 34, 41, 48, 55, 71, 78, 85.) The Complaint alleged that HealthPort responded to each such request and stated that the charge for such records would be 75 cents per page, plus a $2 fee for electronic delivery; the fee demanded was paid by each plaintiff through her or his attorney. For example,

4

[o]n or about September 5, 2013, <u>Carter requested medical records from RGH through her counsel</u>.

35. On or about October 1, 2013, HealthPort, acting on behalf of RGH, sent an invoice, which indicated that Carter would be charged $77.00 for 100 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee").

36. On or about October 7, 2013, <u>Carter paid the $77.00 charge through her counsel in order to obtain copies of the requested medical records</u>.

. . . .

38. The cost to produce these medical records was substantially less than seventy-five cents per page.

39. <u>The fee charged to, and paid by, Carter exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to RGH</u>.

(Complaint ¶¶ 34-36, 38-39 (emphases added).) Parallel allegations were made with respect to each of the other plaintiffs. (<u>See id</u>. ¶¶ 41-43, 45-46 (plaintiff Evelyn Grys); <u>id</u>. ¶¶ 48-50, 52-53 (plaintiff Bruce Currier); <u>id</u>. ¶¶ 55-56, 58-61, 63-66, 68-69 (plaintiff Sharon Koning (three requests)); <u>id</u>. ¶¶ 71-73, 75-76 (plaintiff Sue Beehler); <u>id</u>. ¶¶ 78-80, 82-83 (plaintiff Marsha Mancuso); <u>id</u>. ¶¶ 85-87, 89-90 (plaintiff Jaclyn Cuthbertson).)

While the fee for Carter's records included a $2 charge for "Electronic" delivery (<u>see id</u>. ¶ 35), HealthPort "produced [her] records in paper format" (<u>id</u>. ¶ 37; <u>see also id</u>. ¶¶ 65-67 (same with respect to the third request by Koning)). With respect to the first two requests by Koning and the requests of the other five plaintiffs, the HealthPort fee included charges of 75 cents per page, but their records were provided only electronically through an online portal. (<u>See id</u>. ¶¶ 42-44 (Grys); <u>id</u>. ¶¶ 49-51 (Currier); <u>id</u>. ¶¶ 56-57, 61-62 (Koning); <u>id</u>. ¶¶ 72-74 (Beehler); <u>id</u>. ¶¶ 79-81 (Mancuso); <u>id</u>. ¶¶ 86-88 (Cuthbertson).)

5

In May 2014, plaintiffs commenced the present action on behalf of themselves and a putative class (the "Class"), defined as:

> All patients who requested medical records (either by themselves or through a qualified person acting on their behalf) from a health care provider in the State of New York that contracted with HealthPort Technologies, LLC to produce such records, and were charged on or after May 20, 2008 for such records.

(Complaint ¶ 92; see also id. ¶¶ 93-95 (proposing three "Sub-Classes," one for each of the three Hospitals).) Federal jurisdiction was premised on diversity of citizenship as permitted by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). (See Complaint ¶ 18.)

The Complaint alleged that the fees charged by HealthPort and paid by plaintiffs substantially exceeded the cost to produce the requested medical records and included "built-in kickback[s] from HealthPort to" the respective Hospitals. (E.g., id. ¶¶ 39, 46, 53, 59, 64, 69, 76, 83, 90.) To support this allegation, plaintiffs attached to the Complaint printouts of two advertisements on HealthPort's website offering "hospitals and large clinics" a "shared release of information (ROI)" or "ROI Partner" service, for responding to requests for medical records (Complaint Exhibit 1, at 1). One advertisement stated to offerees, "[w]ith HealthPort ROI Partner, you will gain significant cash flow from the ROI process . . . ." (Id.) The other advertisement proffered testimonials from users of HealthPort's ROI services:

> Just ask--our clients will tell you that our release of information services . . . will . . . boost revenue.

(Complaint Exhibit 2.) Thus, HealthPort quoted a Florida hospital's Administrative Director of Health Information Management, who wrote, inter alia, "We decided to go with" HealthPort's "ROI Partner" service; "[n]ow we're a revenue generating department." (Id.)

The Complaint alleged that charging patients fees in excess of defendants' costs in

6

order to obtain their medical records violated N.Y. Pub. Health Law §§ 18(2)(d) and (e), and unjustly enriched defendants "at the ultimate expense of Plaintiffs and other Class members" (Complaint ¶¶ 116, 123; see id. ¶¶ 115, 122). The Complaint also alleged that defendants' conduct, including charging of excessive fees, "[f]ailing to disclose the actual cost to produce medical records," engaging in the kickback scheme, and failing to disclose the kickbacks, constituted deceptive business practices in violation of New York's General Business Law, see N.Y. Gen. Bus. Law §§ 349(a) and (h) (McKinney 2004). (Complaint ¶ 129.) The Complaint stated that plaintiffs and the Class were injured and suffered monetary losses as a result of defendants' conduct. (See, e.g., id. ¶¶ 109, 116, 123, 134.)

B.  Defendants' Motions To Dismiss

All of the defendants moved to dismiss the Complaint, each urging dismissal under Rule 12(b)(1) on the ground that plaintiffs lacked standing, or dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted. In support of their lack-of-standing argument, defendants principally submitted copies of (a) some of the relevant requests for plaintiffs' medical records, (b) HealthPort invoices for the related fees, and (c) checks or credit-card transaction records in payment of those fees. Defendants argued that these documents showed that the records were requested by, and the fees were paid by, plaintiffs' attorneys Faraci Lange, LLP, and not by plaintiffs directly, and that plaintiffs themselves therefore had suffered no injury and thus had no standing to complain of any charges.

7

C. The Decision of the District Court

In a Decision and Order dated March 31, 2015, see 2015 WL 1508851, the district court granted defendants' motions to dismiss under Rule 12(b)(1) on the ground that the Complaint's allegations were insufficient to show constitutional standing. The court noted that in deciding such a motion it was entitled to "consider evidence outside the pleadings," 2015 WL 1508851, at *3; but it rendered its decision based solely on the Complaint, stating

> I find that the Complaint in this action fails to establish the Plaintiffs' standing to bring this suit. There is no plausible allegation in the Complaint to establish that it was Plaintiffs--as opposed to their counsel--who requested the copies or paid the resulting bill and therefore bore the alleged injuries in this case, and without such an allegation in the Complaint, the Plaintiffs have failed to establish their standing to sue.

Id. at *6.

Having concluded that plaintiffs lacked standing, the court did not address defendants' motions to dismiss under Rule 12(b)(6). The court dismissed the Complaint "with prejudice." Judgment dated April 2, 2015. This appeal followed.

## II. DISCUSSION

On appeal, plaintiffs contend principally that the Complaint, alleging, inter alia, that they, through their attorneys, paid the excessive charges demanded by defendants, and that "'Plaintiffs and other Class members'" bore the "'ultimate expense'" of the overcharges, was sufficient to reveal their Article III standing to bring the present action. (Plaintiffs' brief on appeal at 2.) They argue that while the district court correctly stated the deferential standard applicable to resolution of a motion under 12(b)(1), it failed to apply that standard and to credit the factual allegations in the Complaint.

8

Defendants principally urge us to affirm the district court's dismissal for lack of standing on the ground that the Complaint did not allege that plaintiffs are obligated to repay their attorneys for the fees charged, which defendants contend was necessary to allege injury-in-fact to plaintiffs (see Joint brief on appeal of HealthPort, RGH, and Unity at 9-14; Thompson brief on appeal at 6-12).  Thompson also urges us to affirm the dismissal on the alternative grounds that plaintiffs lack standing to sue Thompson because they failed to show that Thompson caused their alleged injuries and because Thompson did not receive money from HealthPort (see Thompson brief on appeal at 12-17), or that the Complaint fails to state a cause of action.

Preliminarily, we note that where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice.  Such a dismissal is one for lack of subject matter jurisdiction, see, e.g., Davis v. Federal Election Commission, 554 U.S. 724, 732-33 (2008); Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992); Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) ("Amidax"); and without jurisdiction, the district court lacks the power to adjudicate the merits of the case, see, e.g., Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95 (1998).  Accordingly, where there is a lack of Article III standing, "Article III deprives federal courts of the power to dismiss a case with prejudice," Hernandez v. Conriv Realty Associates, 182 F.3d 121, 123 (2d Cir. 1999).  Thus, if we were to agree with the district court's conclusion that the Complaint failed to show Article III standing, we would nonetheless be constrained to have the April 2, 2015 Judgment amended to provide that the dismissal is without prejudice.

For the reasons that follow, however, we vacate the dismissal because we conclude that the Complaint contained sufficient plausible allegations to defeat defendants' Rule 12(b)(1) motions.

9

A. Elements of Article III Standing

> Article III restricts federal courts to the resolution of cases and controversies. . . . That restriction requires that the party invoking federal jurisdiction have standing--the personal interest that must exist at the commencement of the litigation.

Davis, 554 U.S. at 732 (internal quotation marks omitted) (emphasis ours).

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical . . . . Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560-61 (other internal quotation marks omitted) (emphases ours). Only the first and second elements are at issue here.

The injury-in-fact element requires that the plaintiff be "the proper party to bring this suit." Raines v. Byrd, 521 U.S. 811, 818 (1997). "[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute . . . ." Id. at 819. Any monetary loss suffered by the plaintiff satisfies this element; "[e]ven a small financial loss" suffices. Natural Resources Defense Council, Inc. v. United States Food & Drug Administration, 710 F.3d 71, 85 (2d Cir. 2013). Further, a liability, including a contingent liability, may be a cognizable legal injury. See, e.g., Clinton v. City of New York, 524 U.S. 417, 430-31 (1998); E.M. v. New York City Department of Education, 758 F.3d 442, 457 (2d Cir. 2014); Denney v. Deutsche Bank AG, 443 F.3d 253, 265 (2d Cir. 2006).

The "causal connection" element of Article III standing, i.e., the requirement that the plaintiff's injury be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court," Lujan, 504 U.S. at 560

(internal quotation marks omitted), does not create an onerous standard. For example, it is a standard lower than that of proximate causation. See Rothstein v. UBS AG, 708 F.3d 82, 91-92 (2d Cir. 2013). A defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing. See id. at 91.

B. Procedures With Respect to Challenges of Standing

Although the Article III "standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed," Davis, 554 U.S. at 734; see, e.g., Lujan, 504 U.S. at 570-71 n.5 ("standing is to be determined as of the commencement of suit"), the standing issue "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment," Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see, e.g., Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 569, 582 (2004) (raised after jury verdict). At each such stage, "[t]he party invoking federal jurisdiction bears the burden of establishing the[] elements" of Article III standing, Lujan, 504 U.S. at 561; but the stage at which, and the manner in which, the issue is raised affect (a) the obligation of the plaintiff to respond, (b) the manner in which the district court considers the challenge, and (c) the standard of review applicable to the district court's decision.

Since the elements of Article III standing

> are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

Id. Thus, the showing that must be made in order to withstand a dismissal for lack of standing increases as the suit proceeds.

11

At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for <u>on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim</u>. . . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed.Rule Civ.Proc. 56(e) [1987], which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts <u>(if controverted)</u> must be supported adequately by the evidence adduced at trial.

<u>Lujan</u>, 504 U.S. at 561 (other internal quotation marks omitted) (emphases ours).

At issue here are defendants' Rule 12(b)(1) challenges to standing at the pleading stage. A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based.

When the Rule 12(b)(1) motion is facial, <u>i.e.</u>, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading"), the plaintiff has no evidentiary burden. <u>See</u>, <u>e.g.</u>, <u>Amidax</u>, 671 F.3d at 145. The task of the district court is to determine whether the Pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." <u>Id.</u>; <u>see</u>, <u>e.g.</u>, <u>Selevan v. New York Thruway Authority</u>, 584 F.3d 82, 88 (2d Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)). On appeal, we review the district court's decision on such a facial challenge <u>de novo</u>, <u>see</u>, <u>e.g.</u>, <u>W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP</u>, 549 F.3d 100, 106 (2d Cir. 2008), "accept[ing] as true all material [factual] allegations of the complaint," <u>id.</u> (internal quotation marks omitted), and "draw[ing] all reasonable inferences in favor of the plaintiff," <u>Lunney v. United States</u>, 319 F.3d 550, 554 (2d Cir. 2003); <u>see</u>, <u>e.g.</u>, <u>Amidax</u>, 671 F.3d at 145; <u>see also</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading. See, e.g., Amidax, 671 F.3d at 145; Robinson v. Government of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001); Kamen v. American Telephone & Telegraph Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant "if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems" in the assertion of jurisdiction. Exchange National Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976) (emphasis added). However, the plaintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.

If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing. On appeal, "if the [district] court . . . resolved disputed facts, we will accept the court's findings unless they are 'clearly erroneous.'" Rent Stabilization Ass'n of New York v. Dinkins, 5 F.3d 591, 594 (2d Cir. 1993). We review de novo the district court's conclusions of law, as well as findings that are based on undisputed facts evidenced in the record, see, e.g., id., and decisions in which "the district court engaged in no fact-finding in support of its dismissal order," Mackensworth v. S.S. American Merchant, 28 F.3d 246, 252 (2d Cir. 1994). See generally Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("On appeal from . . . a judgment" dismissing the complaint for lack of subject matter jurisdiction, "we review factual findings for clear error and legal conclusions de novo." (internal quotation marks omitted)).

C.  The Present Complaint's Allegations Pertinent to Standing

1.  Injury in Fact

In the present case, although defendants sought to support their motions to dismiss with evidence beyond the Complaint, the district court did not rely on that evidence and made no findings of fact, but rather dismissed on the ground that the Complaint was facially insufficient to show the injury-in-fact element of Article III standing.  Accordingly, we review the district court's decision de novo.

As indicated in Part I.B. above, defendants' proffered documents consisted of medical-records requests transmitted by plaintiffs' attorneys, invoices sent by HealthPort, and checks from the attorneys or transaction records for attorneys' credit card accounts in payment of the fees charged for the records.  The evidence that the attorneys requested the records and paid the fees, however, did not controvert the allegations of the Complaint as to the capacity in which the attorneys were acting; rather, that evidence was entirely consistent with the allegations of the Complaint that plaintiffs requested, were billed for, and paid for records "through" their "counsel."  Thus, plaintiffs were entitled to rely on the allegations of the Complaint in opposition to the motions to dismiss for lack of standing.  And as the evidence proffered by defendants did not contradict the material allegations of the Complaint as to standing, it was not error for the court to base its ruling solely on the allegations of the Complaint.

We conclude that the district court erred, however, in its ruling that the Complaint was facially insufficient to show standing.  In so ruling, the court stated "[t]here is no plausible allegation in the Complaint to establish that it was Plaintiffs--as opposed to their counsel--who requested the

14

copies or paid the resulting bill and therefore bore the alleged injuries in this case."  2015 WL 1508851, at *6.  It is not clear from this statement whether the court saw "no" such factual "allegation" or saw the relevant factual allegations but found them implausible.  But either way, given ordinary principles of agency--"[t]he relationship between a lawyer and client is one of agent and principal," In re Artha Management, Inc., 91 F.3d 326, 328 (2d Cir. 1996)--and given that, on a facial challenge, we are to "presum[e] that general allegations embrace those specific facts that are necessary to support the claim," Lujan, 504 U.S. at 561 (internal quotation marks omitted), the record does not support the district court's view.

As described in Part I.A. above, the Complaint alleged expressly, and plaintiff-by-plaintiff, that the specified plaintiff "requested" "medical records" from the treating hospital "through [her or his] counsel" (Complaint ¶¶ 34, 41, 48, 55, 60, 65, 71, 78, 85); it alleged that each plaintiff "paid" the demanded "charge" for those records "through [her or his] counsel" (id. ¶¶ 36, 43, 50, 56, 61, 66, 73, 80, 87).  These are detailed factual allegations that the plaintiffs were the principals, who acted through their agents in requesting and paying for the records.

Further, there is nothing implausible in the propositions that a person needs her medical records from a hospital and has retained an attorney to represent her.  Indeed, those propositions were explicitly reflected in documents proffered by defendants in support of their motions--for example, in the attorneys' September 5, 2013 letter to RGH requesting records for Carter, which stated "[p]lease be advised that we represent Marissa Carter in a legal matter in which her medical history is relevant" (emphasis added).

The closing statements in such attorneys' letters that "[w]e will promptly reimburse you" for the expense of copying the records did not suggest that the client was not expected to

15

reimburse the attorneys for their prompt expenditures. And any such idea was expressly contradicted by the factual allegations in the Complaint, which were required to be accepted as true, that "the ultimate expense" for the records was borne by "Plaintiffs and other Class members" (Complaint ¶¶ 116, 123; see id. ¶¶ 115, 122). The fact that the payments were to be promptly made by the attorneys does not contradict the allegation that plaintiffs themselves were or would be the ultimate payors.

In sum, agency relationships are plainly described in the Complaint's allegations that each plaintiff acted "through [her or his] counsel" in requesting and paying the fees demanded for providing the medical records, and that plaintiffs bore the "ultimate" expense. If such a fee was unlawfully inflated, as plaintiffs here claim, it is sufficiently alleged that it is the client who was injured. We conclude that the Complaint did not fail to show that plaintiffs themselves suffered injury-in-fact.

2. Traceability

Thompson also argues that the dismissal of the claims against it for lack of standing can be upheld on the ground that the Complaint did not adequately plead causation (see Thompson brief on appeal at 12-17), because plaintiffs "fail[ed] to allege that Thompson directly overcharged them," alleging instead that "HealthPort sent invoices . . . , received the payment . . . and provided the records" (id. at 13 (emphases added)). Thompson's causation-focused challenge to standing borders on the frivolous.

As noted in Part II.A. above, a plaintiff's injury need not be "directly" attributable to a defendant in order to show the causation element of standing to sue that defendant, so long as the

injury is "fairly traceable" to that defendant. New York law, as alleged in the Complaint, requires that when a health care provider receives a medical-records request from the patient or other qualified person, the "health care provider shall furnish to such person . . . a copy of any patient information requested," N.Y. Pub. Health Law § 18(2)(d) (emphases added)). It follows that any response to such a request on behalf of the health care provider is fairly traceable to the health care provider.

The Complaint alleged that Thompson had a contract with HealthPort for HealthPort to handle such requests received by Thompson. (See Complaint at 1 (unnumbered paragraph) & n.1, and ¶ 24; see also Thompson brief on appeal at 14 ("Thompson sends a request for copies of medical records to HealthPort . . . .").) The Complaint alleged that Cuthbertson requested her medical records from Thompson; that the response to her request came from HealthPort acting on behalf of Thompson; and that HealthPort demanded an excessive fee for providing the requested records, which Cuthbertson paid. (See id. ¶¶ 85-90.) The notion that any fee demanded by HealthPort--for providing the records that Thompson was legally obligated to provide and that Thompson contracted with HealthPort to provide--was demanded by a person who was in that respect "independent" of Thompson, Lujan, 504 U.S. at 560 (internal quotation marks omitted), is unsupported by any legal citation and is contrary to common sense. The Complaint plausibly alleged that the overcharge imposed on Cuthbertson by HealthPort is fairly traceable to Thompson.

In light of this conclusion, Thompson's additional argument that an affidavit by of one its employees shows that "Thompson has never received payment from HealthPort for any [patients' records] requests handled by HealthPort" (Thompson brief on appeal at 14) goes not to standing but to the merits. Any such issues remain to be addressed in further proceedings on remand. We also

17

leave it to the district court, in the first instance, to address the contentions that the Complaint fails to state a claim on which relief can be granted.

D.  A Question as to Diversity Jurisdiction

Finally, we note that there remains a question to be explored by the district court on remand as to the existence of diversity jurisdiction.  The Complaint, invoking CAFA, premised jurisdiction on diversity of citizenship under 28 U.S.C. § 1332(d)(2).  That section provides that diversity exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant," id. (emphasis added)--a provision allowing federal jurisdiction based on minimal, rather than complete, diversity, see generally Grupo Dataflux, 541 U.S. at 577 n.6 ("[w]e understand 'minimal diversity' to mean the existence of at least one party who is diverse in citizenship from one party on the other side of the case" (emphasis in original)).  The Complaint's factual allegations do not show that the minimal diversity requirements of § 1332(d)(2) are met.

For purposes of diversity jurisdiction, a corporation is deemed, as relevant here, to be a citizen both of the state in which it has its principal place of business and of any state in which it is incorporated.  See 28 U.S.C. § 1332(c)(1).  Each of the defendant Hospitals is alleged to be a corporation organized and existing under the laws of New York and as having its principal place of business in New York.  (See Complaint ¶¶ 15-17.)  The only allegation in the Complaint as to the citizenship of members of the Class is the allegation in ¶ 18 of the Complaint that plaintiffs--like the Hospitals--are citizens of New York.  Thus, the applicability of § 1332(d)(2) depends on the citizenship of HealthPort.

18

The Complaint, after alleging that plaintiffs are citizens of New York, alleges that "HealthPort is a citizen of a different state" (Complaint ¶ 18), but the latter allegation is insufficient to show that the diversity requirement is met because, standing alone, it is entirely conclusory. Further, although the Complaint also alleges that HealthPort's "principal place of business is located at its headquarters in Alpharetta, Georgia" (id. ¶ 14), HealthPort is identified as a "limited liability company" (id.).

In general, the citizenship of a limited liability company is determined by the citizenship of each of its members. See, e.g., Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC, 692 F.3d 42, 49 (2d Cir. 2012); Handelsman v. Bedford Village Associates Limited Partnership, 213 F.3d 48, 51-52 (2d Cir. 2000). If the usual rule is applicable here, the Complaint is deficient because it contains no allegation as to the identity or citizenship of HealthPort's members.

Under CAFA, however, an "unincorporated association" is "deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). The term "unincorporated association" is not defined in CAFA, and this Court has not addressed the question of whether it encompasses limited liability companies. If it does, the citizenship of HealthPort remains unclear because the Complaint contains no allegation as to the State under whose laws HealthPort is organized.

We leave it to the district court on remand to conduct such proceedings as may be necessary to determine whether there is diversity of citizenship as required by 28 U.S.C. § 1332.

19

## CONCLUSION

We have considered all of defendants' arguments in support of the judgment dismissing the Complaint pursuant to Rule 12(b)(1) for lack of standing and have found them to be without merit. The judgment is vacated, and the matter is remanded for proceedings consistent with this opinion.