23-8104-cv (L)
*Saba Capital Master Fund, LTD. v. BlackRock ESG Capital Allocation Trust*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of June, two thousand twenty-four.

Present:
> WILLIAM J. NARDINI,
> STEVEN J. MENASHI,
> EUNICE C. LEE,
> > *Circuit Judges*.

_____

SABA CAPITAL MASTER FUND, LTD., SABA CAPITAL MANAGEMENT, L.P.,

> *Plaintiffs-Appellees*,

> v.

BLACKROCK ESG CAPITAL ALLOCATION TRUST, MUNICIPAL INCOME FUND, INC., ROYCE GLOBAL VALUE TRUST, INC., TORTOISE MIDSTREAM ENERGY FUND, INC., TORTOISE ENERGY INDEPENDENCE FUND, INC., TORTOISE PIPELINE & ENERGY FUND, INC., TORTOISE ENERGY INFRASTRUCTURE CORP., ECOFIN SUSTAINABLE AND SOCIAL IMPACT TERM FUND, ADAMS DIVERSIFIED EQUITY FUND, INC., ADAMS NATURAL RESOURCES FUND, FS CREDIT OPPORTUNITIES CORP.,

> *Defendants-Appellants*.[*]

23-8104 (L), 24-79 (CON), 24-80 (CON), 24-82 (CON), 24-83 (CON), 24-116 (CON), 24-189 (CON)

_____

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

1

| | |
|---|---|
| For Plaintiffs-Appellees: | MARK MUSICO (Jacob W. Buchdahl, Brandon H. Thomas, *on the brief*), Susman Godfrey L.L.P., New York, NY |
| For Defendants-Appellants BlackRock ESG Capital Allocation Trust and Municipal Income Fund, Inc.: | TARIQ MUNDIYA (Sameer Advani, Vanessa C. Richardson, Aaron E. Nathan, *on the brief*), Willkie Farr & Gallagher LLP, New York, NY |
| For Defendant-Appellant Royce Global Value Trust, Inc.: | EAMON P. JOYCE (Alex J. Kaplan, Charlotte K. Newell, *on the brief*), Sidley Austin LLP, New York, NY |
| For Defendants-Appellants Tortoise Midstream Energy Fund, Inc., Tortoise Energy Independence Fund, Inc., Tortoise Pipeline & Energy Fund, Inc., Tortoise Energy Infrastructure Corp., and Ecofin Sustainable and Social Impact Term Fund: | JOHN T. PRISBE (Lawrence H. Cooke, II, Jessie F. Beeber, *on the brief*), Venable LLP, Baltimore, MD and New York, NY |
| For Defendants-Appellants Adams Diversified Equity Fund, Inc. and Adams Natural Resources Fund: | BRIAN D. KOOSED (Tre A. Holloway, *on the brief*), K&L Gates LLP, Charleston, SC and Washington, DC |
| For Defendant-Appellant FS Credit Opportunities Corp.: | Scott D. Musoff, Eben Colby, Marley Ann Brumme, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA and New York, NY |

Appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *District Judge*), entered on January 4, 2024, denying Defendants-Appellants' motions to dismiss and granting Plaintiffs-Appellees' motion for summary judgment. Defendants-Appellants are eleven closed-end funds ("CEFs") (collectively,

2

the "Funds") organized under Maryland law.[1] Each Fund adopted a resolution to opt in to a provision of the Maryland Control Share Acquisition Act ("MCSAA") (the "Control Share Provision"), which provides that "[h]olders of control shares of the corporation acquired in a control share acquisition have no voting rights with respect to the control shares" unless approved by a two-thirds vote of the other shareholders. Md. Code Ann., Corps. & Ass'ns § 3-702(a)(1). Thus, under the Control Share Provision, shares that would place the holder of the shares at 10% or more of a Fund's voting power are presumptively not given voting rights.

On June 29, 2023, Plaintiffs-Appellees Saba Capital Master Fund, LTD. and Saba Capital Management, L.P. (collectively, "Saba"), a hedge fund that owns shares in each of the Funds, sued the Funds seeking (1) a declaratory judgment that the Funds' resolutions violate the equal voting rights mandate of Section 18(i) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-18(i), and (2) rescission of the resolutions pursuant to Section 47(b) of the ICA, *id.* § 80a-46(b)(2). On the same day that Saba filed suit, it also moved for summary judgment. As relevant here, the Funds moved to dismiss for lack of standing, lack of personal jurisdiction, and failure to state a claim. The district court denied the Funds' motions to dismiss and granted Saba's motion for summary judgment, "declar[ing] that the control share resolutions at issue violate Section 18(i) of the ICA and order[ing] that those resolutions be rescinded forthwith." *Saba Cap. Master Fund, Ltd. v. BlackRock Mun. Income Fund, Inc.*, No. 23-cv-5568 (JSR), 2024 WL 43344, at *7 (S.D.N.Y. Jan. 4, 2024). The Funds appealed. We assume the parties' familiarity with the case.

---

[1] The Defendant-Appellant funds are (1) BlackRock ESG Capital Allocation Term Trust ("ECAT") and BlackRock Municipal Income Fund, Inc.; (2) Royce Global Value Trust, Inc. ("RGT"); (3) Tortoise Midstream Energy Fund, Inc., Tortoise Energy Independence Fund, Inc., Tortoise Pipeline & Energy Fund, Inc., Tortoise Energy Infrastructure Corp., and Ecofin Sustainable and Social Impact Term Fund (collectively, the "Tortoise Funds"); (4) Adams Diversified Equity Fund, Inc. and Adams Natural Resources Fund (collectively, the "Adams Funds"); and (5) FS Credit Opportunities Corp.

## I. Standing

The Funds argue that Saba lacks Article III standing to sue them because Saba does not have a 10% stake in most of the Funds, which is the threshold at which the Control Share Provision takes effect, and therefore Saba will not imminently suffer any injury from the Control Share Provision.[2] We address the issue of standing first because "standing is jurisdictional under Article III" and is thus "a threshold issue in all cases." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991).[3] Here, the Funds' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction was "fact-based" because they "proffer[ed] evidence beyond the [p]leading." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). "On appeal, if the district court resolved disputed facts, we will accept the court's findings unless they are clearly erroneous. We review *de novo* the district court's conclusions of law, as well as findings that are based on undisputed facts evidenced in the record and decisions in which the district court engaged in no fact-finding in support of its dismissal order." *Id.*

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). The primary question here is whether the concrete and particularized injury that Saba alleges will occur—namely, that it will not be able to vote its shares if it acquires more than a 10% stake—is sufficiently imminent.

---

[2] Ten of the eleven defendant Funds join the standing argument. ECAT concedes that, at the time of suit, Saba had over a 10% stake in ECAT.

[3] Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

Saba avers that "[a]s of [June 29, 2023], and given current market conditions, Saba would acquire more than a 10% beneficial ownership stake in the Funds (to the extent it has not already) were it not for the Funds' Control Share Provisions and the imminent risk that those Control Share Provisions will strip Saba of its equal voting rights." J. App'x 44, ¶ 27. "When an Article III injury hinges on a party's intent to take some future action, the Constitution requires more than mere 'some day intentions.'" *Saba Cap. Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 111 (2d Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)). "A plaintiff's few words of general intent, without substantial evidence of plans, do not support a finding of an actual or imminent injury." *Id.* "That said, the standing requirement does not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about." *Id.* "Rather, an allegation of future injury is sufficient where . . . there is a substantial risk that the harm will occur." *Id.* To survive a fact-based challenge under Rule 12(b)(1), a plaintiff may either "rely on the allegations in the [p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," or "come forward with evidence of [its] own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion reveal the existence of factual problems in the assertion of jurisdiction." *Carter*, 822 F.3d at 57. Whether Article III standing exists is a "highly fact-specific" inquiry. *Nuveen*, 88 F.4th at 111 (quoting *Carney v. Adams*, 592 U.S. 53, 63 (2020)).

Considering the totality of the unique factual circumstances presented here, we determine that Saba has Article III standing to sue each of the Funds. Saba has averred that it "would acquire more than a 10% beneficial ownership stake in the Funds (to the extent it has not already)" absent the Control Share Provisions. J. App'x 44, ¶ 27. This sworn testimony amounts to more than

"some day intentions," *Nuveen*, 88 F.4th at 111, because it is supported by evidence of investment planning. Saba has already acquired sizable stakes in many of the Funds and has a "track record" of acquiring large stakes in CEFs. *See id.* at 112. As the Funds acknowledge, part of Saba's financial strategy is to buy "concentrated" stakes in what Saba perceives to be underperforming CEFs. *See* BlackRock Br. at 12–13 ("Saba buys a concentrated stake in a CEF and then uses its outsized influence to cause that CEF to take [certain] actions."). Thus, Saba's sworn testimony, in combination with Saba's past actions and concrete plans, establishes that, in this case, Saba intends to acquire at least a 10% stake in each of these particular Funds.

Further, the Funds have not presented any facts to cast doubt on Saba's intent or ability to acquire at least a 10% stake in each of the Funds. The Funds presented evidence that for the Fund in which Saba owns the lowest stake, RGT at 2%, it would realistically take Saba over three months to obtain a 10% stake in RGT. But the fact that it might take a few months to reach the 10% threshold does not mean that Saba will not or cannot reach that threshold. Accordingly, there exists a substantial risk that the injury will occur here, and that is sufficient to establish Article III standing.

## II.    Personal Jurisdiction

Two of the groups of Funds, the Adams and Tortoise Funds, argue that the district court could not exercise personal jurisdiction over them. The district court held that it could exercise personal jurisdiction under the ICA or, in the alternative, under New York's long-arm statute. "We review a district court's legal conclusions concerning its exercise of personal jurisdiction *de novo*, and its underlying factual findings for clear error." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).

6

We agree with the district court that it could exercise personal jurisdiction over the Adams and Tortoise Funds under the ICA, and therefore do not address its alternative holding. The Adams and Tortoise Funds argue that although the ICA provides for nationwide service of process, *see* 15 U.S.C. § 80a-43—meaning that minimum contacts with the United States suffices to establish personal jurisdiction, *see, e.g.*, *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974)—such nationwide service of process is permitted only if the plaintiff complies with the ICA's venue provision, *accord Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 424–25 (2d Cir. 2005). Assuming (without deciding) that the Adams and Tortoise Funds' interpretation of the ICA is correct, venue was proper in the Southern District of New York ("SDNY").

The ICA provides that venue is proper "in the district wherein the defendant is an inhabitant or transacts business." 15 U.S.C. § 80a-43. "The Supreme Court has construed the phrase 'transacts business' . . . to refer to 'the practical, everyday business or commercial concept of doing business or carrying on business of any substantial character.'" *Daniel*, 428 F.3d at 428 (quoting *United States v. Scophony Corp.*, 333 U.S. 795, 807 (1948)). Therefore, "the propriety of venue turns on the nature of the corporate defendant's business." *Id.* at 429. In other words, "the determination whether a defendant transacted business in a district depend[s] on a realistic assessment of the nature of the defendant's business and of whether its contacts with the venue district could fairly be said to evidence the practical, everyday business or commercial concept of doing business or carrying on business of any substantial character." *Id.*

As CEFs, the Adams and Tortoise Funds are "engaged primarily in the business of investing in securities." *Inv. Co. Inst. v. Camp*, 401 U.S. 617, 625 n.11 (1971). In that context, the Adams and Tortoise Funds concede certain contacts with SDNY, including listing their shares on the New York Stock Exchange and using New York brokers to carry out their investment

7

transactions. The Adams Funds also concede making payments to "certain data resources, such as Bloomberg and S&P Global Market, for purposes of accessing financial and market data." J. App'x at 376. Viewed as a whole, these contacts relate to "the practical, everyday business or commercial concept of doing business" as a CEF. *Daniel*, 428 F.3d at 428. Accordingly, venue was appropriate in SDNY, and the district court could exercise personal jurisdiction over the Adams and Tortoise Funds based on their minimum contacts with the United States.

### III. The Control Share Provision

Lastly, we turn to the merits of Saba's claim, that is, whether the Control Share Provision violates Section 18(i) of the ICA. "We review a district court's grant of summary judgment *de novo*, and will affirm when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Kasiotis v. N.Y. Black Car Operators' Inj. Comp. Fund, Inc.*, 90 F.4th 95, 98 (2d Cir. 2024).

The ICA provides, in relevant part, that "[e]xcept as provided in subsection (a) of this section, or as otherwise required by law, every share of stock hereafter issued by a registered management company . . . shall be a voting stock and have equal voting rights with every other outstanding voting stock." 15 U.S.C. § 80a-18(i). Although the ICA does not define "voting stock," the ICA defines a "voting security" as "any security presently entitling the owner or holder thereof to vote for the election of directors of a company," *id.* § 80a-2(a)(42), and a "security" to include "stock," *id.* § 80a-2(a)(36).

In *Nuveen*, Saba challenged under the ICA a provision substantially similar to the Control Share Provision at issue here. *See* 88 F.4th at 109. Specifically, the amended bylaws of Nuveen, a CEF, "included a Control Share Amendment (the 'Amendment') that limited the ability of shareholders with holdings greater than 10% in any particular fund, like Saba, to vote any

additional shares purchased." *Id.* This Court held that Nuveen's control share provision violated the ICA in two ways: (1) it violated Section 80a-2(a)(42) "because under [the Amendment], if an owner of Nuveen stock cannot 'presently' vote their stock, the stock loses its function and is not 'voting' stock," *id.* at 117; and (2) it also violated "Section 80a-18(i) because it deprives *some* shares of voting power but not others—contrary to the provision's guarantee of 'equal voting rights,'" *id.* (quoting 15 U.S.C. § 80a-18(i)).

The Funds' only argument to distinguish the present case from *Nuveen* is that here, the Control Share Provision does not violate the ICA because it is "otherwise required by law," 15 U.S.C. § 80a-18(i), that is, Maryland law. The Funds argue that although opting into the Control Share Provision was a voluntary act, once they did so, the Control Share Provision became required by Maryland law. But the Funds cannot simply disregard the optional nature of that portion of the MCSAA because the MCSAA does not require a CEF to opt into the Control Share Provision. Rather, as stated expressly in the MCSAA, the Control Share Provision does not apply to a CEF unless its "board of directors adopts a resolution to be subject to" it. Md. Code Ann., Corps. & Ass'ns § 3-702(c); *accord* Boulder Total Return Fund, Inc., SEC No-Action Letter, 2010 WL 4630835, at *4 n.17 (Nov. 15, 2010) ("A CEF is not *required* to opt in to the [MCSAA]'s provisions; the MCSAA is an optional defensive device, and there is no requirement under Maryland law that a CEF avail itself of its protection."). Thus, the Control Share Provision is not "required by law," and consistent with *Nuveen*, violates Section 18(i) of the ICA.

The Funds further argue that even if the Control Share Provision violates the ICA, the district court abused its discretion by granting summary judgment—and ordering rescission of the offending resolutions—without first allowing for discovery under Federal Rule of Civil Procedure 56(d). The Funds argue that discovery was necessary to show that the district court should deny

9

rescission on equitable grounds under Section 47(b)(2) of the ICA. "We review the denial of Rule 56(d) discovery for abuse of discretion." *Elliot v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023).

Section 47(b)(2) of the ICA provides that if a contract, including a corporation's bylaws, violates the ICA, then "a court may not deny rescission at the instance of any party unless such court finds that under the circumstances the denial of rescission would produce a more equitable result than its grant and would not be inconsistent with the purposes of this subchapter." 15 U.S.C. § 80a-46(b)(2). Thus, although "a court may not *deny* rescission" unless it finds that the two conditions of Section 47(b)(2) have been satisfied, "[e]quitable balancing is not required to *grant* rescission." *Nuveen*, 88 F.4th at 120 n.16. Accordingly, the district court did not abuse its discretion by granting rescission of the Funds' resolutions without first allowing for discovery.

\* \* \*

We have considered all of the Funds' remaining arguments and find them unpersuasive. For the reasons stated above, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

10