# In the
# United States Court of Appeals
# For the Second Circuit

August Term, 2018

Argued: September 26, 2018
Decided: December 17, 2018

Docket No. 18-257-cv

SIERRA CLUB

*Plaintiff-Appellant,*

*v.*

CON-STRUX, LLC,

*Defendant-Appellee,*

MARC BRETZ,

*Defendant.*

Appeal from the United States District Court
for the Eastern District of New York
No. 16-cv-4960, Shields, *Magistrate Judge.*

18-257-cv
*Sierra Club v. Con-Strux, LLC*

Before:    HALL, LYNCH, *Circuit Judges*, KUNTZ, *District Judge*.[*]

Plaintiff-Appellant Sierra Club appeals the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendant-Appellee Con-Strux, L.L.C. ("Construx") and Defendant Marc Bretz.  Sierra Club brought this action pursuant to the Clean Water Act ("the CWA" or "the Act"), 33 U.S.C. §§ 1251 *et seq.*, seeking declaratory and injunctive relief.  Sierra Club alleged that Construx was engaged in "industrial activity" within the meaning of the Act but did not have the requisite permit to do so.  The district court (Shields, *M.J.*) concluded that Construx's business fell outside the classifications contemplated under the Act and its implementing regulations.  We hold that Sierra Club's allegations were sufficient to demonstrate, at the pleading stage, that Construx was engaged in "industrial activity."

VACATED AND REMANDED.

> NICHOLAS W. TAPERT (Edan Rotenberg, *on the brief*), Super Law Group, LLC, New York, NY, *for* Plaintiff-Appellant.
>
> DARREN O'CONNOR (Denise J. D'Ambrosio, *on the brief*), Allen & Desnoyers LLP, White Plains, NY, *for* Defendant-Appellee.

HALL, *Circuit Judge*:

We are asked to decide whether the business activity of Con-Strux, L.L.C. ("Construx"), which involves recycling construction debris and waste and subsequently wholesaling aggregate materials it has crushed from that debris and

---

[*] Judge William F. Kuntz, of the United States District Court for the Eastern District of New York, sitting by designation.

2

waste, is "industrial activity" within the meaning of the Clean Water Act ("the

CWA" or "the Act"), 33 U.S.C. §§ 1251 *et seq.*, such that Construx was required to

comply with the CWA's permitting scheme. The district court (Shields, *M.J.*)

concluded that one standard industrial classification (not covered by the Act)

applied to Construx to the exclusion of another classification (covered by the Act).[1]

Accordingly, the magistrate judge determined that Construx was not engaged in

"industrial activity," and thus not subject to the Act.

We disagree. We hold that Sierra Club's allegations are sufficient to

demonstrate, at the pleading stage, that Construx was engaged in "industrial

activity," notwithstanding that part of its business could also be classified as

activity not subject to the Act. Accordingly, we VACATE the judgment and

REMAND for further proceedings consistent with this opinion.

I.

Congress enacted the CWA in 1972 to "restore and maintain the chemical,

physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The

CWA provides a comprehensive approach for the regulation of pollution

---

[1] The "standard industrial classifications" are categories created by the Office of Management and Budget to classify different types of businesses for various statistical purposes. *See* J. App. 118–21. As discussed below, certain EPA regulations make use of the numerical SIC codes in defining what kinds of businesses are engaged in industrial activity within the meaning of the Act.

discharged into the waters of the United States, including from stormwater runoff.[2] The CWA prohibits discharges of pollutants from point sources into the waters of the United States except those that are in accordance with the National Pollutant Discharge Eliminations System ("NPDES"), a system that limits the level of pollution a source may lawfully discharge. *See id.* § 1342; 40 C.F.R. §§ 122.41, 122.44.

Not every incident of stormwater runoff is subject to regulation under the CWA. Only stormwater runoff associated with certain enumerated activities in the Act and its implementing regulations is required to be covered by NPDES permits. As relevant here, Congress has clarified that "discharge associated with industrial activity" requires a NPDES permit. *See* 33 U.S.C. § 1342(p)(2)(B). The EPA has by regulation provided further guidance by supplying categories of facilities that "are considered to be engaging in 'industrial activity.'" *See* 40 C.F.R. § 122.26(b)(14)(i)–(xi). The category at issue here includes

> [f]acilities involved in the recycling of materials, including metal scrapyards, battery reclaimers, salvage yards, and automobile junkyards, including but limited to those classified as Standard Industrial Classification [("SIC")] 5015 and 5093.

---

[2] "Stormwater runoff" refers to the path of rainwater and melted snow that flows over hard surfaces and is not absorbed into the ground, but instead flows into the nation's streams, rivers, and other bodies of water.

*Id.* § 122.26(b)(14)(vi). Specifically, the parties agree that the question presented is whether Construx is engaged in "industrial activity" within the meaning of SIC 5093.

SIC 5093, entitled "Scrap and Waste Materials," encompasses "[e]stablishments primarily engaged in assembling, breaking up, sorting, and wholesale distribution of scrap and waste materials." J. App. 145. The classification lists certain materials that are considered to be scrap and waste materials—such as fur cuttings and wiping rags—but includes in the list what appears to be a catch-all category identified only as "Scrap and waste materials— wholesale." *Id.*

Not included in the EPA's categories of facilities engaged in "industrial activity" are those specified in SIC 5032. That classification, entitled "Brick, Stone, and Related Construction Materials," covers "[e]stablishments primarily engaged in the wholesale distribution of stone, cement, lime, construction sand, and gravel; brick (except refractory); asphalt and concrete mixtures; and concrete, stone, and structural clay products (other than refractories)." *Id.* at 142. In its list of examples, SIC 5032 refers specifically to "Aggregate—wholesale." *Id.*

II.

Construx is the operator of a facility located in Lindenhurst, New York. Its facility recycles demolished concrete, asphalt, and other construction products that it then processes and resells on the wholesale market for use by the construction industry. According to Sierra Club, this activity generates a variety of pollutants, which in turn are regularly exposed to stormwater. Such activity, Sierra Club asserts, qualifies as "industrial activity" requiring a permit, and it is undisputed that Construx does not have a permit. According to Construx, however, it processes only "recognizable uncontaminated concrete, asphalt pavement, brick, soil or rock known as RUCARBS" and is therefore not required to obtain a permit. *Id.* at 43 (internal quotation marks omitted).

Construx moved to dismiss Sierra Club's complaint for failure to state a claim, and the case was referred to a magistrate judge for all purposes, on consent of the parties. After oral argument, the court addressed what the parties agreed to be the only question: whether Construx was a SIC 5093 facility and thus engaged in "industrial activity." The court agreed with Construx that it was more properly classified as a SIC 5032 facility not covered by the Act. In so concluding, the court focused on SIC 5032's specific reference to stone, brick, asphalt, concrete, and aggregate, materials not listed in SIC 5093 but which are the focus of Construx's

business. The court thus concluded that Construx was "not a Section 5093 'recycler' that is subject to that statute's storm water runoff regulation." *Id.* at 235.

III.

"We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (alteration omitted) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

The parties agree that the sole issue before this Court is whether, on the facts pleaded in the complaint, Construx is engaged in "industrial activity" within the meaning of the CWA, and that this question is decided by reference to whether

Construx's business is properly classified as falling within SIC 5093. The magistrate judge concluded that Construx was not and was instead more properly classified as a SIC 5032 facility not covered by the Act. We conclude the court erred by discounting a significant portion of Construx's business operations.

Based on the complaint, and Construx's own description, Construx's business involves two distinct processes, each equally important to the business model: (1) recycling "construction waste" and (2) wholesaling aggregate materials it has crushed down from that construction waste. Although we agree that SIC 5032 captures the second aspect of Construx's business, it fails to account for the first aspect of that business. Whether ultimately borne out by the evidence, it must be taken as true for purposes of a Rule 12(b)(6) motion that Construx accepts at its facility what other businesses deem scrap or waste material. After receiving it, Construx then crushes that material to sell later on the wholesale market.

We conclude that processing construction debris and waste for recycling fits within the definition of activities covered under SIC 5093. The narrative section of SIC 5093—"[e]stablishments primarily engaged in assembling, breaking up, sorting, and wholesale distribution of scrap and waste materials," J. App. 145—clearly encompasses the first aspect of Construx's business. On its face, the generic

8

"Scrap and waste materials—wholesale," category is broad enough to cover the type of recycling in which Construx engages. Further, this generic category would be superfluous if confined to the likes of the other examples, which delineate specific types of scrap and waste recycling covered by SIC 5093. *See State St. Bank & Tr. Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003) ("It is well-settled that courts should avoid statutory interpretations that render provisions superfluous: 'It is our duty to give effect, if possible, to every clause and word of a statute.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Construx protests, nonetheless, that the district court properly concluded that SIC 5032 is a better fit than SIC 5093 as a descriptor of Construx's business activities. But, as Construx conceded at oral argument, nothing in the Act or the implementing regulations suggests that the classification of a facility is an either-or proposition, and we conclude in this case that it is not. Construx provides no persuasive argument as to why a "better" category is either necessary or exclusive. This is unsurprising given the inherently multifarious nature of industrial activity. Further, restricting a business to one category would effectively allow an entity to insulate itself from the CWA's permitting requirement by conducting polluting activities in the back yard while running a clean shop in the front. Accordingly,

9

even if Construx's business is properly classified under SIC 5032, that does not preclude a finding that it is also properly classified under SIC 5093.

In determining only that the district court improperly dismissed the complaint at the Rule 12(b)(6) stage, we express no opinion as to the ultimate resolution of Sierra Club's claims.

CONCLUSION

For the foregoing reasons, we VACATE the district court's dismissal of this action and REMAND for further proceedings consistent with this decision.