DENISE COTE, District Judge:
Defendants LLR, Inc. and LuLaRoe, LLC (collectively "LLR" or "Defendants") have moved to dismiss the second amended complaint ("SAC") filed by plaintiff Lauren Porsch ("Porsch" or "Plaintiff")
*422 pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P, and to strike the class allegations in the SAC. That motion is denied.
Background
The following facts are alleged in the SAC and are assumed to be true for the purpose of addressing this motion. LLR is a "multi-level marketing company" that sells clothing under the brand name "LuLaRoe" at wholesale prices to independent retailers ("Retailers") in all fifty states. The Retailers resell this merchandise to consumers at retail prices through social media. LLR collects and remits sales taxes for each retail purchase on behalf of its Retailers.
When a buyer and a seller reside in different states, and the seller ships the purchased goods to the buyer's state, the tax laws of the buyer's state govern the transaction. New York State exempts clothing sold for less than $ 110 from state sales tax. Certain local jurisdictions in New York also exempt clothing under $ 110 from local sales tax. This action is brought on behalf of consumers who purchased less than $ 110 of LLR merchandise from Retailers outside New York, and had those purchases shipped into New York. Plaintiff alleges that she and the class she seeks to represent were charged sales tax on these purchases -- that is, they were charged sales tax based on the tax laws of the jurisdiction in which the Retailer was located, rather than exempted from paying sales tax under the laws of New York.
In 2015, LLR implemented a point-of-sale ("POS") system called "Audrey." LLR required its Retailers to use Audrey to calculate, collect, and remit sales taxes on purchases by consumers. Audrey allowed Retailers to turn off sales tax charges when they made sales into tax-free jurisdictions. In early 2016, LLR discovered that Audrey was remitting sales taxes on each sale to the Retailer's taxing jurisdiction, even where sales tax had not been collected by the Retailer because the purchaser lived in a non-tax jurisdiction. Thus, LLR was remitting sales taxes that it had never collected and did not owe.
In April 2016, LLR reprogrammed Audrey to charge sales tax on all purchases pursuant to the tax law of the Retailer's jurisdiction, regardless of the purchaser's location. After implementing this tax policy, LLR issued a "sales tax memorandum" and a "white paper" to all of its Retailers. Porsch alleges that these memoranda incorrectly told Retailers that the new tax policy, which required that taxes be charged based on the location of the Retailer, was "proper and legal."
In 2016, the Attorneys General of Pennsylvania and Minnesota contacted LLR about the improper collection of sales tax. LLR acknowledged the problem and represented that "its software development team is currently correcting the electronic invoicing system, which will calculate sales tax based on the address of the ultimate customer." Despite these acknowledgments, LLR continued to incorrectly charge sales taxes until it implemented a new POS system in January 2017 called "Bless." The transition to Bless was not fully completed until June 1, 2017, at which point Audrey was disabled.
Porsch, a resident of New York City, made thirteen purchases through Facebook from LLR Retailers located outside New York between December 2016 and February 2017. Porsch received invoices for each of those purchases that included charges labeled "tax," adding up to a total of $ 50.63 across the thirteen purchases.[1]
*423 LLR Retailers, relying on guidance from LLR, explained to Porsch and other consumers that purchasing through Facebook was analogous to purchasing directly from the Retailer at his or her home, and that the tax laws of the Retailer's jurisdiction therefore applied. Porsch alleges that "her purchasing behavior changed" in response to LLR's practices. She alleges, for example, that she spent time and effort to identify Retailers located in low-tax jurisdictions or those that had made the switch from Audrey to Bless.
LLR never remitted any of the $ 50.63 that Porsch paid in "tax" to any New York state or municipal taxing authority. Rather, LLR remitted those funds to the taxing jurisdiction of the Retailer who was responsible for the sale. In total, LLR charged sales tax on about 104,144 transactions shipped into non-taxing jurisdictions in New York between April 2016 and June 1, 2017.
A class action challenging LLR's sales tax practices was filed in the Western District of Pennsylvania on February 17, 2017, under the caption Webster v. LLR, Inc., 2:17-cv-00225 (DSC). Porsch alleges that, prior to the commencement of the Webster action, LLR had only refunded taxes on 38 of the 2.5 million nationwide transactions on which it had improperly charged sales tax. Only one of those refunds went to a consumer located in New York. At the time the instant action was commenced, LLR had refunded $ 329,922.83 of improperly charged sales tax to New York consumers including Porsch, without interest.
On August 20, 2018, class certification was denied in the Webster action because of variation in the laws of the eleven states in which the class members were located. Thereafter, plaintiffs who were members of the Webster class filed putative class actions, including this action, in district courts around the country challenging LLR's sales tax collection practices under the laws of various states.
This action was filed on October 11, 2018. A First Amended Complaint ("FAC") was filed on November 28. Defendants moved to dismiss the FAC on December 12. On January 7, 2019, Porsch filed her Second Amended Complaint ("SAC"), thereby mooting the December 12 motion. The SAC contains two causes of action for deceptive acts and practices in violation of New York General Business Law § 349 and for conversion under New York law. Defendants renewed their motion to dismiss on January 28. That motion became fully submitted on March 14.
Discussion
I. Subject Matter Jurisdiction
LLR has moved to dismiss the SAC for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), asserting that Porsch lacks constitutional standing to sue under Article III of the United States Constitution. That motion is denied.
When moving to dismiss for lack of subject matter jurisdiction, a defendant may either challenge the pleading as facially deficient, "based solely on the allegations of the complaint," or may "make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." Carter v. HealthPort Tech., LLC, 822 F.3d 47, 56-57 (2d Cir. 2016) ; see also Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 119 (2d Cir. 2017). On a facial challenge to subject matter jurisdiction, a plaintiff has "no evidentiary *424 burden" and a court must "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Carter, 822 F.3d at 56 (citation omitted) (emphasis omitted). When the challenge to subject matter jurisdiction is premised on lack of Article III standing, "[t]he task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." Id. (citation omitted).
Article III vests the federal courts with jurisdiction over "cases" and "controversies." U.S. Const. art. III. In the absence of a case or controversy, a federal court lacks subject matter jurisdiction and the complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Thus, "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." Spokeo, Inc. v. Robins, --- U.S. ----, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). "It is axiomatic that the irreducible constitutional minimum of standing contains three elements: the plaintiff must have suffered an injury in fact (1) that is concrete and particularized, (2) that is causally linked to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable decision." Dubuisson v. Stonebridge Life In. Co., 887 F.3d 567, 573 (2d Cir. 2018) (citation omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." Spokeo, 136 S. Ct. at 1547 (2016) (citation omitted).
"To demonstrate injury in fact, a plaintiff must show the invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016) (citation omitted). "To be concrete, an injury must actually exist, that is it must be real and not abstract." Id. (citation omitted). "While tangible harms are most easily recognized as concrete injuries, Spokeo acknowledged that some intangible harms can also qualify as such." Id.
Porsch has alleged an injury in fact sufficient to satisfy the requirements of Article III Standing. It is undisputed that Porsch was fully refunded all of the sales tax that she alleges was inappropriately charged. Nonetheless, LLR's voluntary refund program does not deprive Porsch of Article III standing.
In Campbell-Ewald Co. v. Gomez, --- U.S. ----, 136 S. Ct. 663, 670, 193 L.Ed.2d 571 (2016), the Supreme Court held that an unaccepted settlement offer is insufficient to moot a case. The Seventh Circuit in Laurens v. Volvo Cars of N. Am., LLC, 868 F.3d 622, 627 (7th Cir. 2017), extended that holding to an unaccepted refund offer made prior to suit. Here, the refunds issued by LLR were automatically credited to Porsch -- she was not given the option to accept or reject them. The same principles underlying Campbell-Ewald and Laurens counsel against allowing the defendants to deprive potential plaintiffs of standing by simply crediting their accounts prior to suit.
Moreover, temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing. As the Honorable Richard Posner has observed, albeit in another context, "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money." Habitat Educ. Ctr. v. U.S. Forest Serv., 607 F.3d 453, 457 (7th Cir. 2010). It is a basic principal of economics and accounting that "a dollar today is worth more than a dollar tomorrow."
*425 Atlantic Mut. Ins. Co. v. Commissioner, 523 U.S. 382, 383, 118 S.Ct. 1413, 140 L.Ed.2d 542 (1998) (citing D. Herwitz & M. Barrett, Accounting for Lawyers 221 (2d ed. 1997)). Whether described in terms of "interest" or "time value of money," this is a sufficient "injury in fact" to support Article III standing.
Neither the Second Circuit nor the Supreme Court have directly addressed whether loss of the time value of money is a sufficient injury in fact to establish Article III standing. The Seventh Circuit, however, has suggested that it is. In Dieffenbach v. Barnes & Noble, Inc., 887 F.3d 826 (7th Cir. 2018), plaintiffs brought a putative class action against Barnes & Noble after they discovered that their credit or debit card information had been stolen as a result of a breach of Barnes & Noble's payment system. The court held, in part, that "plaintiffs have standing ... because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal ...." Id. at 828.
In a case against the same defendants arising out of the same LLR refund program, a court in the District of Alaska has held that "the de minimus amount alleged lost in interest is inadequate to establish Article III standing." Van v. LLR, Inc., 3:18-cv-0197 (HRH), 2019 WL 1005181 at *6 (D. Alaska Mar. 1, 2019) (citation omitted).[2] That holding is unpersuasive. There is no de minimis exception to the Article III standing. It is well-established in the Second Circuit that "the injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice." In re MTBE Products Liability Litig., 725 F.3d 65, 105 (2d Cir. 2013) (citation omitted). "An identifiable trifle is enough, the Supreme Court has explained, because standing doctrine's purpose is to distinguish a person with a direct stake in the outcome of a litigation -- even though small -- from a person with a mere interest in the problem." Dhinsa v. Krueger, 917 F.3d 70, 78 (2d Cir. 2019) (citation omitted); cf. Campbell-Ewald, 136 S. Ct. at 669 ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.").
LLR relies principally on two district court cases in arguing that the lost time value of money is not an adequate "injury in fact" for constitutional standing purposes. Both of those decisions, however, avoided squarely addressing this question. Taylor v. Federal Aviation Admin., 351 F. Supp. 3d 97 (D.D.C. 2018) (the plaintiff did not allege sufficient facts to warrant "ventur[ing] down this rabbit hole."); Epstein v. JPMorgan Chase & Co., 13cv4744 (KPF), 2014 WL 1133567, at *7 n.6 (S.D.N.Y. Mar. 21, 2014) (the plaintiff did not argue that the defendants had deprived him of the time value of money); see also Kawa Orthodontics, LLP v. Secretary, U.S. Dept. of the Treasury, 773 F.3d 243 (11th Cir. 2014) (the plaintiff had not adequately alleged that it had lost interest).
The remaining prongs of Article III standing -- causation and redressability -- are unchallenged and are met here. Porsch therefore has Article III standing to bring this suit and this Court has subject matter jurisdiction. LLR's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is denied.
II. Failure to State a Claim
"To survive a motion to dismiss, a complaint must contain sufficient factual matter, *426 accepted as true, to state a claim to relief that is plausible on its face." Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation omitted). A claim to relief is plausible when the factual allegations in a complaint "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Progressive Credit Union v. City of New York, 889 F.3d 40, 48 (2d Cir. 2018) (citation omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d Cir. 2017). The plaintiff must plead enough facts to "nudge[ ] [his] claims across the line from conceivable to plausible ...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[ ] all factual allegations as true, and draw[ ] all reasonable inferences in the plaintiff's favor." Coalition for Competitive Electricity, Dynergy Inc. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018) (citation omitted). "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) (citation omitted). A court may also consider documents that are "integral to the complaint." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).
A. New York Tax Law Sections 1139 and 1140
LLR argues that Porsch's claims are barred by New York Tax Law Sections 1139(a) and 1140, which provides an exclusive administrative remedy for sales taxes "erroneously, illegally or unconstitutionally collected or paid."[3] Because the well-pleaded factual allegations in the SAC indicate that no New York taxes were collected or remitted, that argument is misplaced.
Section 1139 of the New York Tax law establishes a procedure through which a taxpayer may seek a refund for "any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid" by application to the tax commission. N.Y. Tax Law § 1139(a). Section 1140 in turn provides that
[t]he remedies provided by sections eleven hundred thirty-eight[4 ] and eleven hundred thirty-nine shall be exclusive remedies available to any person for the review of tax liability imposed by this article; and no determination or proposed determination of tax or determination on any application for refund shall be enjoined or reviewed by an action for declaratory judgment, an action for money had and received, or by any action or proceeding other than a proceeding *427 under article seventy-eight of the civil practice law and rules.
Id. § 1140 (emphasis omitted). A number of New York courts and district courts in the Second Circuit have confirmed that "the administrative remedy outlined in § 1139 to refund a tax 'erroneously, illegally or unconstitutionally collected or paid' is exclusive." Guterman v. Costco Wholesale Corp., 342 F. Supp. 3d 468, 477-78 (S.D.N.Y. 2018) (citation omitted) (collecting cases). The Second Circuit has held that when a plaintiff has failed to exhaust her state law administrative remedy, the action must be dismissed. Holt v. Town of Stonington, 765 F.3d 127, 130 (2d Cir. 2014). No court has addressed the precise question presented here -- namely, whether Section 1139 provides the exclusive remedy for taxes that are inappropriately collected by a retailer pursuant to the tax laws of another jurisdiction.
Statutory interpretation "begins ... with the text of the statute." Nat. Res. Def. Council, Inc. v. U.S. Food and Drug Admin., 760 F.3d 151, 172 (2d Cir. 2014). Section 1140 provides that the procedures set out elsewhere in the tax law are the "exclusive remedies available to any person for the review of tax liability imposed by this article ...." N.Y. Tax Law § 1140. Here, no New York sales tax was collected. Rather, sales tax was allegedly improperly collected and remitted pursuant to the tax laws of other jurisdictions. Plaintiff therefore does not seek review of tax liability "imposed by" the New York tax law.
Courts applying Section 1140 as a bar to civil actions have observed that the collection of sales tax is a "ministerial act." See Cohen v. Hertz Corp., 13cv1205(LTS), 2013 WL 9450421, at *3 (S.D.N.Y. Nov. 26, 2013) (citation omitted). Here, LLR was not performing a ministerial act on behalf of New York when it collected the allegedly improper sales tax. Viewed from the perspective of New York law, LLR simply overcharged its customers -- whether that charge was labeled "sales tax" or something else is immaterial. Further, it would make little sense to require Porsch to apply for a refund from New York taxing authorities when no New York tax was collected and none was remitted to the state.
The cases upon which LLR relies to support its contention that Section 1139 provides the exclusive remedy for illegally or erroneously collected sales tax even where the tax was never remitted to the state are inapposite. Togut v. Forever 21, Inc., 285 F. Supp. 3d 643, 657-48 (S.D.N.Y. 2018) (plaintiff had not adequately alleged that the defendant failed to remit the collected tax to the state); Kupferstein v. TJX Companies, Inc., 15cv5881(NG), 2017 WL 590324, at *3 (E.D.N.Y. 2017), (speculative allegation that defendant had failed to remit tax).
B. General Business Law Section 349
Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business ... or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To state a claim for deceptive practices under Section 349, a plaintiff must plead that: (1) the defendant engaged in a consumer-oriented act, (2) the consumer-oriented act was misleading in a material way, and (3) the plaintiff consequently suffered injury. See Stutman v. Chem. Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000). Conduct is consumer-oriented where a defendant engages in "an extensive marketing scheme [or] multi-media dissemination of information to the public," as well as where it reflects "a standard or routine practice that [could] potentially affect[ ] similarly situated consumers."
*428 N. State Autobahn, Inc. v. Progressive Ins. Grp., 102 A.D.3d 5, 953 N.Y.S.2d 96, 101 (2d Dep't 2012) (citation omitted); Wilson v. Northwestern Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010) ("The consumer-oriented requirement may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers." (citation omitted)). "Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must demonstrate that the acts or practices have a broader impact on consumers at large." Wilson, 625 F.3d at 64. "There is, of course, a well-recognized public interest in prohibiting conduct that confuses or deceives consumers." MZ Wallace Inc. v. Fuller, No. 18cv2265(DLC), 2018 WL 4007645, at *5 (S.D.N.Y. Aug. 22, 2018). "[A] plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances." Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018) (citation omitted). "The kinds of trade practices which have been considered as deceptive in the past include false advertising, ... [and] misrepresentation of the origin, nature or quality of the product." Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 630 N.Y.S.2d 769, 773 (2d Dep't 1995) (citation omitted). A claim under Section 349 requires that the deceptive act or practice "resulted in actual injury to a plaintiff." Blue Cross and Blue Shield of N.J. v. Philip Morris USA Inc., 3 N.Y.3d 200, 206, 785 N.Y.S.2d 399, 818 N.E.2d 1140 (2004).
First, LLR's alleged practice of over-charging customers under the guise of a "sales tax" was consumer-oriented. It reflects "a standard or routine practice that [could] potentially affect[ ] similarly situated consumers." N. State Autobahn, Inc., 953 N.Y.S.2d at 101 (citation omitted). The SAC adequately alleges that the practice did in fact affect a significant number of similarly situated customers. LLR argues that the collection of sales tax cannot be consumer oriented because it is a "ministerial act." As discussed above, this argument is misguided when no taxes were due to or sent to New York taxing authorities.
Second, LLR's practices are "likely to mislead a reasonable consumer" and were thus "materially misleading." Mantikas, 910 F.3d at 636. LLR repeatedly represented to consumers that they were being charged a sales tax when, in fact, no sales tax was owed. Further, the SAC describes affirmative steps taken by LLR to spread alleged misinformation regarding the legality of its tax policy. LLR's argument that Porsch suffered no "actual injury" as a result of its alleged deceptive practices is misplaced for the same reasons discussed above with respect to the "injury in fact" prong of Article III standing.
C. Conversion
Under New York law,
[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.
Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006) ; see also Pappas v. Tzolis, 20 N.Y.3d 228, 234, 958 N.Y.S.2d 656, 982 N.E.2d 576 (2012).
Porsch has stated a claim for conversion. She has alleged that, through deception, LLR took possession of money to which it had no right and held that money *429 for a period of months, thus interfering with her right of possession.
LLR argues that it cannot be liable for conversion because it has refunded the improperly collected sales tax and because Porsch does not allege that she made a demand for return of her money. These arguments are meritless. "A claim for conversion will exist even when the deprivation is partial or temporary." Slue v. New York Univ. Med. Ctr., 409 F. Supp. 2d 349, 364 (S.D.N.Y. 2006). A demand is only required when the original possession was lawful. Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 50 (2d Cir. 1996).
III. Motion to Strike Class Allegations
LLR has moved to strike the class allegations from the SAC pursuant to Fed. R. Civ. P. 12(f). Under Fed. R. Civ. P. 12(f), courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12. Rule 12(f) motions to strike are disfavored. "The function of a 12(f) motion to strike has been seen as avoiding the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." VNB Realty, Inc. v. Bank of Am. Corp., No. 11cv6805 (DLC), 2013 WL 5179197, at *2 (S.D.N.Y. Sept. 16, 2013) (citation omitted). Motions to strike under Rule 12(f) "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." Id. at *3 (citation omitted).
LLR's motion to strike the class allegations is based on its arguments that its refund program is a superior form of adjudication to a class action and that Porsch is an inadequate class representative. These arguments will be addressed at the time any motion for class certification is filed. LLR's motion to strike the class allegations is denied.
Conclusion
LLR's January 28 motion to dismiss and to strike class allegations is denied.

A declaration submitted by LLR in connection with this motion indicates that, according to LLR's records, it actually overcharged Porsch $ 152.60 during the class period and has refunded her that amount. For the purposes of addressing this motion, the Court will refer to the $ 50.63 number pleaded in the SAC. The precise number has no bearing on the decision of this motion.

On March 8, 2019, a Magistrate Judge in the District of Montana issued a Report and Recommendation in another related case which rejected the holding in Van and recommended that LLR's motion to dismiss for lack of Article III standing be denied. Hill v. LLR, Inc., 4:18-cv-00120-BMM-JCL, ECF no. 50.

Although some courts have considered the reach of New York's tax law a jurisdictional issue to be analyzed under Rule 12(b)(1), see, e.g. Estler v. Dunkin' Brands, Inc., 16cv932(LGS), 2016 WL 5720814, at *2 (S.D.N.Y. Oct. 3, 2016), it is best thought of as an argument to dismiss the claims for failure to state a claim pursuant to Rule 12(b)(6). The subject matter jurisdiction of the federal courts is circumscribed by Article III of the United States Constitution and by Congress, not by the legislatures of the several states. "In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to the acts of states which have no power to enlarge or contract the federal jurisdiction." Grand Bahama Petroleum Co., Ltd. v. Asiatic Petroleum Corp., 550 F.2d 1320, 1325 (2d Cir. 1977) (citation omitted).

Section 1138 of the New York Tax Law deals with determination of tax. N.Y. Tax Law § 1138.