23-7401-cv
*B. B. v. Hochul*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2024
No. 23-7401-cv

**B.B., a minor, by his Next Friend JOY ROSENTHAL, on behalf of themselves and all other similarly situated youth, T.R., a minor, by his Next Friend CYNTHIA GODSOE, on behalf of themselves and all other similarly situated youth, M.P., a minor, by his Next Friend ADIRA HULKOWER, on behalf of themselves and all other similarly situated youth, Z.W. and D.W., minors, by their Next Friend JENNIFER MELNICK, on behalf of themselves and all other similarly situated youth, C.W.C., a minor, by her Next Friend JOY ROSENTHAL, on behalf of themselves and all other similarly situated youth, J.R., a minor, by his Next Friend ANNA ROBERTS, on behalf of themselves and all other similarly situated youth, J.S. and S.S., minors, by their Next Friend LISA HOYES, on behalf of themselves and all other similarly situated youth, C.P., a minor, by his Next Friend CYNTHIA GODSOE, on behalf of themselves and all other similarly situated youth, C.C., a minor, by her Next Friend LISA HOYES, on behalf of themselves and all other similarly situated youth, E.R., A.R., and M.R., minors, by their Next Friend PEGGY COOPER DAVIS, on behalf of themselves and all other similarly situated youth,**

*Plaintiffs-Appellants,*

v.

**KATHY HOCHUL, in her official capacity as Governor of the State of New York, SHEILA J. POOLE, in her official capacity as Commissioner of the New York State Office of Children and Family Services, CITY OF NEW YORK,**

*Defendants-Appellees.*

On Appeal from the U.S. District Court
for the Eastern District of New York

ARGUED: DECEMBER 13, 2024
DECIDED: FEBRUARY 2, 2026

Before:    PARK, MENASHI, and KAHN, *Circuit Judges*.

The plaintiffs are fourteen children who were removed from their biological parents by New York City officials. Other relatives sought certifications to foster or adopt the children but were denied the certifications because of a criminal history or a report of child abuse or mistreatment. The plaintiffs alleged that New York's certification scheme violates their substantive due process rights to family integrity and to be free from harm. They also alleged that New York violated their right to procedural due process by not affording them notice or an opportunity to challenge the denial of a relative's application. The district court dismissed the complaint for lack of standing and alternatively because the plaintiffs asserted only the rights of third-party relatives.

We conclude that the plaintiffs have standing. The plaintiffs have suffered a real-world harm: They have been denied a certified placement with a relative foster parent. The plaintiffs who did not receive any foster placement have also been denied the medical and social services provided to children in foster care. The plaintiffs who were placed in the foster care of non-relatives have also been exposed to risks of psychological and emotional harms. These are real-world injuries, traceable to the defendants, and redressable by a favorable

2

ruling. The district court erred by ruling otherwise. The district court further erred by holding that the plaintiffs lack prudential standing. The plaintiffs are asserting their own rights rather than those of their relatives. But some claims are moot: Two plaintiffs are now in the care of a relative foster parent and another has aged out of the foster system. Only one plaintiff has standing to challenge New York's certification scheme for adoption. For these reasons, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

_____

LISA FREEMAN (Kathryn Wood and Kimberly R. Schertz, *on the brief*), Legal Aid Society, New York, New York, *for Plaintiffs-Appellants*.

PHILIP J. LEVITZ (Barbara D. Underwood, Judith N. Vale, *on the brief*) *for* Letitia James, Attorney General of the State of New York, New York, New York, *for State Defendants-Appellees*.

JAMISON DAVIES (Richard Dearing, Claude S. Platton, *on the brief*) *for* Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, New York, *for Defendant-Appellee the City of New York*.

_____

MENASHI, *Circuit Judge*:

When a child is removed from his or her biological parents, New York law requires officials to notify any relatives of the child who may be able to provide care. Those relatives must apply for certification to serve as a foster or adoptive parent. A relative who applies for certification may be disqualified on any of three grounds.

First, if the relative has been convicted of certain crimes, New York law requires that the application be denied. Second, if the relative has been convicted of or charged with any other crime, officials may deny the application after conducting an assessment. Third, if evidence suggests that the relative abused or mistreated a child in the past, officials similarly may deny the application.

The plaintiffs in this case are fourteen children who were removed from their parents by New York City officials. After the removals, relatives sought certifications to serve as foster or adoptive parents but were denied because of their criminal history or reports of child abuse or mistreatment. The plaintiffs filed this lawsuit, alleging that New York's certification scheme violates their substantive due process rights to family integrity and to be free from harm. They also allege that New York violated their rights to procedural due process by not affording them notice or an opportunity to challenge the denial of a relative's application. The district court dismissed the case for lack of standing and alternatively because the plaintiffs asserted only the rights of third-party relatives rather than their own rights.

We conclude that the plaintiffs have standing. The plaintiffs have suffered a real-world harm: They have been denied a certified placement with a relative foster parent. The plaintiffs who did not receive any foster placement have also been denied the medical and social services provided to children in foster care. The plaintiffs in the foster care of non-relatives have also been exposed to the risks of psychological and emotional harms. These are real-world injuries, traceable to the defendants, and redressable by a favorable ruling. The district court erred by ruling otherwise.

4

The district court further erred by holding that the plaintiffs lack prudential standing. The plaintiffs are asserting their own rights rather than those of their relatives. But some claims are moot: Two plaintiffs are now in the care of a relative foster parent and another has aged out of the foster system. Only one plaintiff has standing to challenge New York's certification scheme for adoption. For these reasons, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

New York City's Administration for Children's Services ("ACS") removes thousands of children from their parents each year because of abuse or neglect. After doing so, ACS must notify "any relatives" of the child and inform the relatives of the opportunity to care for the child. N.Y. Fam. Ct. Act § 1017(1)(a). The statute defines a relative as "any person who is related to the child by blood, marriage or adoption and who is not a parent, putative parent or relative of a putative parent of the child." *Id.* § 1012(m).[1] The relative may seek certification to become a foster or adoptive parent. *See* N.Y. Fam. Ct. Act § 1017(1)(a); *see also* N.Y. Soc. Serv. Law § 376(1). As part of the certification process, ACS gathers information for a criminal background check of the applicant and any other adult who resides in the same household. ACS will also request any records from the New York State Central Register of Child Abuse and Maltreatment ("SCR"). The SCR compiles information about reports of child abuse and neglect. *See* N.Y. Soc. Serv. Law § 424(2).

---

[1] A putative parent is an "alleged or reputed" but not established parent of a child. *Father*, Black's Law Dictionary (12th ed. 2024).

Relatives who apply to foster or adopt a child may be disqualified on any of three grounds. First, the relative's application "shall be denied" if the relative has "a felony conviction" involving "(i) child abuse or neglect; (ii) spousal abuse; (iii) a crime against a child, including child pornography; or (iv) a crime involving violence, including rape, sexual assault, or homicide, other than a crime involving physical assault or battery." *Id.* § 378-a(2)(e)(1)(A). Additionally, the application must be denied for a felony conviction "within the past five years" for "physical assault, battery, or a drug-related offense." *Id.* § 378-a(2)(e)(1)(B). New York State's Office of Children and Family Services ("OCFS") issues guidelines that identify the specific offenses within these general categories. The plaintiffs refer to these provisions as the "mandatory disqualification system." J. App'x 58. Federal law conditions federal funding for foster care and adoption assistance on the implementation of this system. *See* 42 U.S.C. § 671(a)(20)(A)(i)-(ii).

Second, the relative's application "may be denied" if the applicant or any adult residing in the household has "a charge or a conviction of any crime." N.Y. Soc. Serv. Law § 378-a(2)(e)(3)(B). When the criminal history shows a criminal charge or conviction that does not require mandatory disqualification, ACS must perform "a safety assessment of the conditions in the household" and take "all appropriate steps to protect the health and safety" of the child. *Id.* § 378-a(2)(h). OCFS publishes guidance about how ACS must conduct the safety assessment, including a list of factors to consider. After conducting the assessment, ACS has the discretion to approve or deny the relative's application for certification as a foster or adoptive parent.

Third, the relative's application may be denied if the relative "is the subject of an indicated report" of child abuse or mistreatment in

the SCR. *Id.* § 424-a(2)(a). Before 2022, a report was "indicated" if "some credible evidence" supported an allegation of abuse or mistreatment. *Id.* § 412(7). From 2022 onward, an "indicated" report must include an allegation supported by "a fair preponderance of the evidence." *Id.* If a relative has an "indicated" report of child abuse or mistreatment, OCFS's guidelines direct ACS to consider the "seriousness of the incident involved in the report; the relevant circumstances surrounding the report; the time elapsed since the most recent incident; and information regarding the applicant's rehabilitation." J. App'x 62 (¶ 180). New York State must conduct these assessments of potential foster or adoptive parents to receive federal funding. *See* 42 U.S.C. § 671(a)(20)(A), (B)(i).

New York provides various services and support to foster children and their foster parents. It issues monthly payments to foster parents as reimbursement for care-related expenses, including funds for "transportation, clothing allowance, school related expenses and miscellaneous expenses." J. App'x 56 (¶ 161); *see* N.Y. Soc. Serv. Law § 398-a. The benefits also "include coordination and provision of services for the child's medical, mental health, and scholastic needs." J. App'x 56 (¶ 161). Adoptive parents receive an "adoption subsidy" and other "post-adoption services" such as "counseling, caregiver training, clinical and consultative services, and coordinating access to community supportive services." *Id.* at 57 (¶ 163).

Apart from foster care and adoption, New York offers a temporary route for a relative to care for a child removed from his or her parents. While a child's final placement is pending, the family court may "temporarily place the child with a relative … during the pendency of the proceeding or until further order of the court." N.Y. Fam. Ct. Act § 1017(2)(a)(ii). The plaintiffs refer to this as a "direct placement." J. App'x 19 (¶ 16). The plaintiffs allege that children may

7

be directly placed with relatives even when those same relatives have been denied certification to foster or adopt. According to the plaintiffs, relatives who care for a child under a direct placement receive more limited benefits than those who foster or adopt. And, per the complaint, a direct placement may last for years.

ACS removed the plaintiff children from their parents. The complaint alleges that eleven of the plaintiffs live with a relative through a direct placement. Two others live in foster homes. The final plaintiff is over eighteen years old and no longer in state care.[2] Each of the plaintiffs had a relative who sought certification as a foster parent but was not approved.

The plaintiffs filed this lawsuit under 42 U.S.C. § 1983 on behalf of themselves and other children who were or will be removed from their parents and denied a foster or adoptive placement with a relative. They allege that New York's certification scheme for foster and adoptive parents violates their substantive due process rights to family integrity and to be free from harm. They also allege that the scheme violates their rights to procedural due process. They named as defendants the governor, the commissioner of the New York State Office of Children and Family Services, and the City of New York.[3] The plaintiffs seek declaratory and injunctive relief requiring New York to modify its scheme to provide a more "individualized evaluation" of prospective foster or adoptive parents. J. App'x 84.

---

[2] Because this plaintiff, M.P., is an adult and has removed himself from foster care, his claims are moot. *See* N.Y. Fam. Ct. Act § 1055(e) ("No placement may be made or continued under this section beyond the child's eighteenth birthday without his or her consent.").

[3] The plaintiffs have not challenged the dismissal by the district court of all claims against the governor.

8

On a motion from the defendants, the district court dismissed the case. *See B.B. v. Hochul*, No. 21-CV-6229, 2023 WL 5935803, at *13 (E.D.N.Y. Sept. 12, 2023). With respect to the right to family integrity, the district court held that most of the plaintiffs have no cognizable injury because they currently live with their relatives. *See id.* at *6. For those not living with relatives, the district court held that they could not trace their separation from relatives to the defendants. *See id.* at *8-9. With respect to the right to be free from harm, the district court again held that the plaintiffs living with relatives had no cognizable injury because they were not in the care of the state. *See id.* at *10. For the remaining plaintiffs, the district court held that they did not allege constitutionally inadequate treatment but only suboptimal treatment, which the district court concluded is not a cognizable injury. *See id.* at *10-11. In the alternative, the district court held that the prudential standing doctrine barred the plaintiffs' claims. *See id.* at *11-12. The plaintiffs now appeal.

## DISCUSSION

In their complaint, the plaintiffs raise two primary claims. First, they argue that New York's certification scheme violates their substantive due process rights to family association and to be free from harm. Second, the plaintiffs argue that the Due Process Clause affords them the right to receive notice of a denied certification and to challenge the decision of ACS not to certify their relatives as foster or adoptive parents. The district court dismissed the plaintiffs' substantive due process claims because the plaintiffs lacked standing. It did not address the procedural due process claims. In addition, the district court held that the plaintiffs "do not qualify for prudential standing" because they asserted the rights of their relatives rather than their own rights. *Id.* at *11.

9

Generally, "[w]e review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1092 (2d Cir. 2024) (quoting *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021)). But "[i]t is well settled that 'where a district court grants a defendant's Rule 12(b)(1) motion to dismiss, an appellate court will review the district court's factual findings for clear error and its legal conclusions *de novo*.'" *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022) (alteration omitted) (quoting *Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 638 (2d Cir. 2005)). To the extent that the district court "resolved disputed facts" in "aid of its decision as to standing," we "will accept the [district] court's findings unless they are clearly erroneous." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (internal quotation marks omitted).

We hold that the plaintiffs have standing to raise their substantive and procedural due process claims. The complaint plausibly alleges that New York's certification scheme has deprived each plaintiff of a relative foster parent and the psychological and financial benefits that would result from that relationship. These are real-world injuries that are traceable to the actions of ACS and OCFS and that could be redressed by a judicial decision in the plaintiffs' favor. In holding that the plaintiffs lack standing, the district court erroneously conflated the standing requirements of Article III with the merits of the plaintiffs' claims. We further hold that the "prudential standing doctrine" does not bar the plaintiffs' claims. The plaintiffs have suffered individualized harms, and their suit seeks to vindicate their own rights rather than the rights of their relatives. We reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

# I

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024) (quoting U.S. Const. art. III, § 2). "For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue." *Dep't of Commerce v. New York*, 588 U.S. 752, 766 (2019). "To establish Article III standing," a plaintiff must allege "an injury [that is] concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). The plaintiff must have "a personal stake in the outcome of the controversy." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The plaintiff "must, in other words, be able to answer a basic question: 'What's it to you?'" *Bost v. Ill. State Bd. of Elections*, No. 24-568, 2026 WL 96707, at *3 (U.S. Jan. 14, 2026) (quoting Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)). By limiting the judicial power to cases or controversies, Article III "confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

The plaintiffs' substantive claims challenge three aspects of New York's certification scheme: (1) mandatory denials for conviction of certain crimes, (2) discretionary denials for charges or convictions of any crime, and (3) discretionary denials based on indicated SCR reports. The plaintiffs allege that these policies violate (1) the substantive due process right to family association and

11

integrity and (2) the right to be free from harm. We consider each of the three aspects of New York's certification system in turn.

## A

The plaintiffs allege that New York's mandatory disqualification rule for approving foster and adoptive parents violates their substantive due process rights to family integrity and to be free from harm. Under New York law, a relative's application to serve as a foster or adoptive parent must be denied if the relative has been convicted of certain crimes. *See* N.Y. Soc. Serv. Law § 378-a(2)(e)(1)(A)-(B). The complaint explains that the relatives of plaintiffs B.B., J.R., E.R., A.R., and M.R. were denied certification at least in part because of a criminal conviction that resulted in mandatory disqualification.[4] These plaintiffs have standing to challenge New York's mandatory disqualification laws for foster parents.

## 1

First, they have suffered a "concrete injury": the deprivation of a relative foster parent and the benefits that would result from that relationship. *TransUnion*, 594 U.S. at 425. That is "a factual showing of perceptible harm." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 566 (1992). The denial of a relative foster parent and the benefits associated with that relationship are "tangible" harms, *TransUnion*, 594 U.S. at 425,

---

[4] In its brief, the City of New York suggests that plaintiff C.C.'s relative was also subject to mandatory disqualification. *See* City of New York Br. 30 n.5. According to the complaint, however, C.C.'s relative was denied certification because of an SCR report and a "drug related conviction" from 1996. J. App'x 44 (¶ 116). While the record is not entirely clear on this point, a drug conviction over five years old is generally not a mandatory disqualifier. *See* N.Y. Soc. Serv. Law § 378-a(2)(e)(1)(A)-(B). Accordingly, we consider C.C.'s claims in relation to the discretionary criteria.

that are "real, and not abstract," *id.* at 424 (quoting *Spokeo*, 578 U.S. at 340). And the harms are "particularized" to these specific plaintiffs. *Id.* at 423.

Even if we considered the harm to be "intangible," the plaintiffs still have established an Article III injury. "Various intangible harms can also be concrete." *Id.* at 425. Concrete intangible harms include (1) "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," and (2) "harms specified by the Constitution itself." *Id.* The injuries alleged here fall into both categories. The plaintiffs allege that placements with non-relatives make children less likely to find permanent placements and increase the risk of psychological and other harms. Such harms have been "traditionally recognized as providing a basis for lawsuits in American courts." *Id.*; *see Carey v. Piphus*, 435 U.S. 247, 263 (1978) (noting that "mental and emotional distress" is "a personal injury familiar to the law"); *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021) (explaining that emotional distress "carries a close relationship to a traditional harm" and "has been part of our common-law tradition for centuries") (internal quotation marks omitted).[5]

The plaintiffs also allege that they have suffered a "harm[] specified by the Constitution itself." *TransUnion*, 594 U.S. at 425. We have recognized that "the Constitution in at least some circumstances protects familial relationships from unwarranted government interference." *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002); *see also*

---

[5] The district court appeared to agree. *See B.B.*, 2023 WL 5935803, at *9 ("[T]he Court joins its sister courts in taking a broad view of the concept of harm attendant to the right to be free from unreasonable intrusions into a child's emotional harm.").

13

*Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977) (plurality opinion) ("[T]he Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition."). Because a person has an "interest in preserving the integrity and stability of her family," *Rivera v. Marcus*, 696 F.2d 1016, 1024-25 (2d Cir. 1982), interference with the relationships that form a family is a "harm[] specified by the Constitution," *TransUnion*, 594 U.S. at 425.

Plaintiffs B.B., J.R., E.R., A.R., and M.R. have also alleged an injury that implicates the right to be free from harm. The Supreme Court has recognized that "the Constitution imposes" a "duty" on states "to assume some responsibility" for an individual's "safety and general well-being" when the state takes the person into its custody. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). That responsibility includes appropriate medical care and services necessary to maintain the individual's safety. *See id.* at 198. At least one court in this circuit has held that the right to be free from harm includes the right "to appropriate conditions and duration of foster care." *Marisol A. v. Giuliani*, 929 F. Supp. 662, 676 (S.D.N.Y. 1996). In this case, the plaintiffs plausibly allege that the denied certifications have forced them either to live with non-relatives or to live with relatives who are not certified as foster parents, depriving them of medical and social services and placing them at a higher risk of never achieving a permanent placement. These are also "harms specified by the Constitution." *TransUnion*, 594 U.S. at 425.

In sum, the plaintiffs plausibly allege an Article III injury. The plaintiffs want to live with relative foster parents but cannot do so. That is a tangible harm. But even if it were intangible, these are harms "traditionally recognized as providing a basis for lawsuits in American courts" and "specified by the Constitution." *Id.*

**2**

Second, these plaintiffs' injuries are fairly traceable to the defendants. *See Carter*, 822 F.3d at 55. The City of New York, acting through ACS, refused to certify the plaintiffs' relatives as foster parents. These denials followed the guidelines issued by OCFS that identify which crimes require mandatory disqualification. OCFS also "oversee[s] ACS and ensur[es] that ACS complies with all applicable … state laws," including the ones challenged here. J. App'x 49 (¶ 134).

**3**

Third, a judicial decision in the plaintiffs' favor could redress their injuries. If New York's rules requiring mandatory disqualification of the plaintiffs' relatives because of the criminal convictions were held to be unlawful, the defendants could no longer apply those rules to deny certification to the relatives seeking to foster B.B., J.R., E.R., A.R., and M.R. That would remove the only alleged barrier to certification with relative foster parents and would provide the plaintiffs with the individualized evaluations they seek.[6]

---

[6] Only B.B. alleges that his relatives seek to *adopt* him but are unable to do so because of New York's mandatory disqualification laws. *See* J. App'x 23 (¶ 36) ("Despite their hardship, Mr. and Mrs. R. would love to provide further stability and express their love for B.B. through adoption. However, based on the statute, Mr. and Mrs. R. are not eligible to be approved as adoptive parents due to the same mandatory disqualifying conviction that barred them from foster parent certification."). For that reason, only B.B. has standing to challenge the mandatory disqualification rules as applied to *adoption*.

The defendants argue that whatever harm these plaintiffs may have suffered is not traceable to the state or the city because federal law requires New York to impose mandatory disqualifications as a condition of receiving federal funding for state adoption and foster services. Moreover, the defendants insist that any injuries would not be redressable because the funds the plaintiffs seek come from the federal government, and if New York removed its mandatory disqualification requirements, the federal government would no longer provide those funds.

The federal government, however, does not *require* New York to implement the mandatory disqualification laws. It incentivizes states to do so. In response to that incentive, New York decided to implement the federal requirements to receive the federal funds. And that decision caused an injury to these plaintiffs. The plaintiffs' injuries are thus "fairly traceable to the challenged action of the defendant[s], and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations omitted) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)).

The defendants argue that any injury to plaintiff J.R. is not traceable to their actions because J.R.'s grandmother independently chose to "relinquish[] custody" *before* ACS denied certification. State Defendants Br. 37. According to a family assessment and service plan dated February 14, 2020, at some point in February, J.R.'s grandmother asked that J.R. be removed from her home because she could not "financially provide for [J.R.] via medical insurance." Confidential App'x 17. A later assessment says that J.R. was removed on February 21 because the "home was not approved to be cleared

and certified by OCFS guidelines." *Id.* at 29. The notes do not establish when J.R.'s grandmother was denied certification and whether she asked for J.R. to be removed before or after that denial. The district court did not make a finding on this issue. *See B.B.*, 2023 WL 5935803, at *8-9.

At the motion-to-dismiss stage, we draw all reasonable inferences in favor of the plaintiffs, including with respect to facts relevant to standing. *See Warth*, 422 U.S. at 501 ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). Even when a defendant offers extrinsic evidence to challenge standing, "plaintiffs are entitled to rely on the allegations in the [p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Carter*, 822 F.3d at 57.

In this case, it is reasonable to infer that J.R.'s grandmother was denied certification and asked that J.R. not be directly placed with her because of her inability to care for him with medical insurance. The complaint alleges that foster children "are automatically eligible for Medicaid" when certification is granted. J. App'x 57 (¶ 162). That suggests that J.R.'s grandmother could have been able to care for him if granted certification. The Supreme Court has recognized that a plaintiff may establish standing by showing "that third parties will likely react in predictable ways." *Dep't of Commerce*, 588 U.S. at 768. While J.R.'s grandmother asked for him to be removed, the complaint suggests that the request was a predictable effect of denying certification. In that way, it was traceable to the actions of the defendants. Further evidence may show that J.R.'s removal was not

17

fairly traceable to the certification decision.[7] Based on the record at this stage, however, J.R. has standing to raise his substantive due process claim.

**B**

The plaintiffs argue that the New York law authorizing ACS and other agencies to deny certification based on *any* criminal history violates their substantive due process rights. Under New York law, a relative's application to be a foster or adoptive parent "may be denied" if the applicant or another adult in the household has "a charge or a conviction" for any crime other than one requiring mandatory disqualification. N.Y. Soc. Serv. Law § 378-a(2)(e)(3)(A)-(B). The relatives of plaintiffs T.R., Z.W., D.W., J.S., S.S., C.P., and C.C. were denied certification under this provision because of their criminal histories.

With two exceptions, these plaintiffs have standing to raise their substantive due process challenges.[8] They have suffered an

---

[7] *See Lujan*, 504 U.S. at 561 (explaining that each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation").

[8] Since filing suit, a relative of plaintiffs Z.W. and D.W. was certified as a foster parent, rendering their claims moot. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("It is not enough that a dispute was very much alive when [the] suit was filed; the parties must continue to have a personal stake in the ultimate disposition of the lawsuit.") (internal quotation marks and alteration omitted). The plaintiffs ask us to assess Z.W.'s and D.W.'s injuries at the time of the filing of the complaint, arguing that their injuries "are inherently transitory." *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993); *see* Appellants' Reply Br. 36-37. But the complaint does not plausibly allege that the plaintiffs are quickly put into foster placements with relatives such that the allegedly illegal conduct of the defendants is "capable of repetition,

18

injury: the deprivation of a relative foster parent and the associated benefits that accompany that relationship. The injury is traceable to the defendants: ACS denied certification to their relatives, and OCFS oversees ACS's decisions and publishes guidelines that affect how ACS exercises its discretion to deny certification on the basis of criminal history. And the injury is redressable: If a court agreed that the law authorizing discretionary denials violates the plaintiffs' substantive due process rights, the court could enjoin the legal obstacle to the plaintiffs' relationships with their relatives.

The defendants argue that C.P. has not suffered an injury because he was never in the care of a relative. After ACS removed C.P. from his mother, he was taken into ACS custody. C.P.'s uncle offered to become C.P.'s foster parent, but ACS denied his application because of a conviction for driving under the influence. C.P. then was placed in the foster home of a non-relative, and he never spent any time living with his uncle after being removed from his mother.

That is still a cognizable injury. C.P. seeks foster certification with his uncle, and ACS prevented and continues to deny such certification. C.P. claims that the state has thereby destabilized his family relationship. *See Rivera*, 696 F.2d at 1024-25. That cognizable harm is traceable to the defendants' decision not to certify C.P.'s uncle as a foster parent. It may be that the defendants are ultimately correct that the right to family association and integrity does not require the state to create new living arrangements and to afford those arrangements legal protection. *See* State Defendants Br. 31-40. But that

---

yet evading review." *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). The direct placements may last for years, providing time for judicial review. *See, e.g.*, J. App'x 21 (¶ 26). We assess the injuries of the plaintiffs at the time of the appeal; because Z.W. and D.W. live with a relative foster parent, their claims are moot.

question addresses whether C.P. will succeed on the merits of his claim, not whether he has standing to raise it in the first place.[9]

## C

The plaintiffs further argue that the New York law authorizing ACS to deny certification based on an indicated SCR report violates their substantive due process rights. Under New York law, a relative's application to be a foster or adoptive parent may be denied if the applicant "is the subject of an indicated report" of child abuse or mistreatment. N.Y. Soc. Serv. Law § 424-a(2)(a). The relatives of plaintiffs T.R., C.W.C., J.S., S.S., C.C., E.R., A.R., and M.R. were denied certification at least in part because of an SCR report.[10]

The plaintiffs have standing to challenge this aspect of the certification scheme. All of the plaintiffs were denied a relative foster parent at least in part because of an SCR report. That is a concrete injury. It is traceable to the defendants: New York City, operating through ACS, denied the certifications pursuant to guidelines issued by OCFS. And if the court agreed with the plaintiffs that this law

---

[9] The named plaintiffs whose relatives were denied certification under the discretionary criminal history provision do not plausibly allege that their relatives intend to adopt them. For that reason, the plaintiffs lack standing to challenge these provisions as applied to adoption.

[10] The plaintiffs do not specifically allege that the relative of C.W.C. was denied because of an SCR report. But the plaintiffs do allege that "ACS reported that [the relative] could not be certified due to an incident that occurred in her home over five years earlier while she was serving as a foster parent. ACS conducted an investigation when a child was injured in the home, allegedly due to one young child hitting another with a toy. The investigation was unfounded but [the relative's] home was closed." J. App'x 33-34 (¶ 78).

20

violates their substantive due process rights, it could enjoin the barrier to a foster placement with their relatives.

The defendants argue that the plaintiffs lack standing because of a recent change to New York law. Starting in 2022, OCFS will not disclose an indicated SCR report about child mistreatment—as opposed to abuse—if the report occurred more than eight years ago. *See* N.Y. Soc. Servs. Law § 424-a(1)(e)(i)(B)(II). Under the statute, indicated reports of child mistreatment that are over eight years old "shall be deemed not relevant and reasonably related to employment." *Id.* § 424-a(1)(e)(iv)(B). And OCFS has issued an administrative directive specifying that ACS "*cannot* consider the existence of such report[s] in determining whether to … approve a prospective foster home [or] adoptive home." J. App'x 232 (emphasis added). In other words, going forward, an indicated SCR report for mistreatment that is more than eight years old cannot serve as the basis for denying a relative's application for certification.

While the SCR reports used to disqualify the relatives of these plaintiffs are all more than eight years old, for many plaintiffs it is unclear whether the SCR reports addressed mistreatment as opposed to abuse. And it is unclear whether the changes will affect the plaintiffs in any event. The new provisions, at least as presented on appeal, do not describe a procedure for reconsideration of applications that were already denied or specify whether the provisions apply retroactively. The complaint suggests that ACS may refuse to reconsider a previously denied application. In C.W.C.'s case, ACS refused to alter its original decision despite learning from OCFS that the underlying incident in the report was unfounded. *See id*. at 34 (¶ 79) ("ACS reported that … it had attempted to have [the relative's] previous foster care determination overturned [but] ACS's efforts were unsuccessful.") (internal quotation marks and alteration

21

omitted). On this record, we cannot say that ACS will reconsider its prior denials based on the updated statutory scheme. The district court may consider that issue on remand.[11]

## D

In holding that the plaintiffs lack standing, the district court decided that the plaintiffs have not suffered a cognizable injury because the substantive due process rights to family integrity and to be free from harm do not require the state to place the plaintiffs in ideal foster settings or to promote specific types of family arrangements. *See B.B.*, 2023 WL 5935803, at *6-7, *10-11. That approach conflates the merits of the plaintiffs' claims with whether the plaintiffs have standing to pursue the claims.

The district court held that some plaintiffs lack standing because they currently reside with a relative in a direct placement. "[I]n this context," the district court reasoned, "the liberty interest in the right to family association is implicated only where the government seeks to remove a child from their familial association." *Id.* at *6. As a result, the district court held that the plaintiffs "failed to plead an injury to their right to family association and integrity." *Id.* But the reasoning of the district court addressed the scope of the right to family association and integrity rather than the existence of an injury-in-fact to the plaintiffs. To the extent that it focused on real-world harms, the district court acknowledged that the challenged

---

[11]  As with the discretionary criminal history provisions, none of the named plaintiffs whose relatives were denied certification because of an SCR report have alleged that their relatives intend to adopt them. For that reason, none of these plaintiffs have standing to challenge these provisions as applied to adoption.

policies deprived the plaintiffs of the benefits associated with a foster placement, "making [the] children worse off." *Id.* at *13.

It might ultimately be true that the right to family association and integrity does not require the government to provide legal support for foster relationships between relatives. But a plaintiff's standing does not depend on the eventual success of his legal theory. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015). "Standing is about who may access the courthouse, not about the merits of the claims to be heard once inside." *Soule v. Conn. Ass'n of Schs.*, 90 F.4th 34, 45 (2d Cir. 2023). "The standing issue must therefore be resolved 'irrespective of the merits of the substantive claims.'" *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (alteration omitted) (quoting *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1060 (2d Cir. 1991)).

"For the purposes of the standing inquiry," a court must "assume" that the plaintiffs "are correct" on their legal theory. *Soule*, 90 F.4th at 41; *see id.* at 48 ("In this procedural posture, we must assume Plaintiffs are correct [on the merits] and that [the plaintiffs] are therefore impacted by an unlawful policy."). The court then may evaluate whether the legal theory would allow the plaintiffs to obtain redress for a concrete injury that the defendants caused. *See id.* at 41 (evaluating standing "[w]ith these assumptions in mind"). The failure to credit the legal theory when evaluating standing "confuses weakness on the merits with absence of Article III standing." *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011).

The decision of the district court reflected a similar confusion with the merits when it considered the plaintiffs' claims that New York violated the right to be free from harm. The district court agreed with the plaintiffs that there is a right to be free from harm and a right

23

to "an appropriate duration of foster care." *B.B.*, 2023 WL 5935803, at *9. The plaintiffs allege that placement with non-relatives makes children less likely to find a permanent placement and increases the risks of psychological and other harms. One plaintiff, while in the foster care of non-relatives, was diagnosed with ADHD, a major depressive disorder, a language disorder, and PTSD. J. App'x 37 (¶ 91). Another plaintiff, after placement in a non-relative foster home, "regressed significantly—needing diapers, even though he has long been potty-trained, and wetting the bed"—and was "referred for individual therapy." *Id.* at 43 (¶ 110). But the district court concluded that these harms "do[] not constitute an injury to [the plaintiffs'] right to be free from harm" because, "as a matter of law, the right to be free from harm does not require that the government prov[ide] the least restrictive, optimal placement, or optimal level of treatment." *B.B.*, 2023 WL 5935803, at *10. The district court might be correct that the right to be free from harm does not entitle the plaintiffs to the relief they seek. But that would be a decision on the merits of their claims. Whether the plaintiffs are legally entitled to relief does not affect whether they have standing to seek it.

The plaintiffs allege that New York has denied them a relative foster parent; has denied the financial, medical, and social services associated with that relationship; or has exposed them to psychological harm and instability. Those are actual injuries. The plaintiffs might not succeed on the merits. In other words, the rights to family integrity or to be free from harm might not require New York to alter its certification scheme. But Article III of the Constitution allows the plaintiffs to obtain an answer to that question from a court.

24

## II

In addition to their substantive claims, the plaintiffs allege that the defendants violated their procedural due process rights. They argue that New York's certification scheme fails to provide them with notice that a relative's application was denied and with an opportunity to challenge that denial. To be sure, their *relatives* often receive notice and limited opportunities to challenge the denials. *See, e.g.*, J. App'x 38 (¶ 96). But the children do not. The district court did not expressly address the plaintiffs' procedural due process claims, though we presume that it dismissed those claims because of its decision that the plaintiffs lacked an injury-in-fact and therefore standing to pursue any claims.

Because the plaintiffs have standing to pursue their substantive claims, they may pursue their procedural claims as well.

## III

After conducting its analysis under Article III, the district court additionally held that the plaintiffs lacked "prudential standing." *B.B.*, 2023 WL 5935803, at *12. According to the district court, the plaintiffs "assert[] the legal rights and interests" of their relatives, so the plaintiffs must show "that there is a hindrance or barrier for [their relatives] to assert their rights in [c]ourt and to protect their own interests." *Id.*

Article III of the Constitution limits the jurisdiction of a federal court to "Cases" or "Controversies." In addition to this constitutional requirement, the Supreme Court has "adverted to a 'prudential' branch of standing," which includes "the general prohibition on a litigant's raising another person's legal rights." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)). This

25

"prudential standing rule requires that an individual 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *United States v. Suarez*, 791 F.3d 363, 367 (2d Cir. 2015) (quoting *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014)).

The Supreme Court has recognized that a prudential standing requirement that exceeds the requirements of Article III "is in some tension" with the Court's "reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Lexmark*, 572 U.S. at 126 (internal quotation marks omitted). But the Court has also suggested that "limitations on third-party standing" might properly be classified as constitutional rather than prudential. *Id.* at 127 n.3.[12] We accordingly continue to apply those limitations.

The plaintiffs in this case do not assert the rights of their relatives. They assert their own rights to family association and to be free from harm. The denial of relative foster placements—and the associated benefits of those placements—harm the plaintiffs. The complaint does not seek to redress harms to the relatives. The relatives have not been denied a stable home that prevents them from achieving a permanent placement. The relatives have not been denied

---

[12] Justice Thomas has explained that "[t]he Court's previous statements on the rule against third-party standing have long suggested that the 'proper place' for that rule is in Article III's case-or-controversy requirement." *June Med. Servs. L.L.C. v. Russo*, 591 U.S. 299, 363 (2020) (Thomas, J., dissenting). That is because "[w]hen a private plaintiff seeks to vindicate someone else's legal injury, he has no private right of his own genuinely at stake in the litigation," and a plaintiff cannot "establish a case or controversy by asserting the constitutional rights of others." *Id.* at 364-66.

medical benefits or been exposed to the emotional and psychological harms of placement with non-relatives.

The plaintiffs also seek to vindicate their own interests in procedural due process. New York law requires that a relative who applies for certification must receive notice when that application is denied. *See* N.Y. Soc. Serv. Law § 378-a(2)(g); *id.* § 424-a(2)(b)(i). The relative has a limited opportunity to challenge the denial. *See id.* § 378-a(2)(g); *id.* § 424-a(2)(c). But the plaintiffs did not receive notice when their relatives' applications were denied and were not given opportunities to contest the denials. The plaintiffs claim that the Constitution entitles not only the relatives but also the children to notice and an opportunity to be heard. There is no prudential or constitutional reason to prevent that claim from being considered.

**IV**

The defendants argue that we may affirm the judgment of the district court on the alternative ground that, even though the plaintiffs have standing, they fail to state a claim on the merits. But "[w]e are 'a court of review, not of first view.'" *Havens v. James*, 76 F.4th 103, 123 (2d Cir. 2023) (quoting *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 610 (2013)). The district court dismissed the case for lack of subject matter jurisdiction. While the district court effectively addressed the merits of the plaintiffs' claims in the course of that dismissal, it did so "based on its erroneous conclusion that these [merits] questions implicated the subject matter jurisdiction of the federal courts. We therefore vacate the judgment and remand for further proceedings not tainted by that conclusion." *Baroni v. Port Auth. of N.Y. & N.J.*, 161 F.4th 48, 60 (2d Cir. 2025).

**CONCLUSION**

The plaintiffs suffered concrete injuries-in-fact when they were denied placements with relative foster parents. The plaintiffs directly placed with relatives were denied the medical and social services available to foster children and the stability of a foster relationship. The plaintiffs in the care of non-relatives have been exposed to psychological harm and the risk of being denied a permanent placement. But the claims of three plaintiffs are moot, and only B.B. has standing to challenge New York's certification rules for adoptive parents. We therefore reverse the judgment in part, affirm in part, and remand for further proceedings consistent with this opinion.